
# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GRANGE INSURANCE ASSOCIATION, )
a Washington corporation, )
                                         )
              Respondent, )
                                           )
              v. )
                                           )
ELIZABETH and WESLEY ROBERTS, )
husband and wife, and the marital )
community composed thereof; )
                                         )
              Appellants, )
_____)

NO. 69356-5-I

DIVISION ONE

ORDER GRANTING NONPARTIES'
MOTIONS TO PUBLISH OPINION

Nonparties William R. Hickman, Geoffrey Bedell, and Susanna Sharp have filed motions to publish opinion filed October 28, 2013. Appellants have filed a response supporting publication; the respondent has filed a response objecting to publication. The court has determined that the motions should be granted; therefore, it is

ORDERED that the nonparties' motions to publish opinion are granted.

DATED this ___ day of March 2014.

_____
Judge



COURT OF APPEALS DI<br>
STATE OF WASHINGTON

2013 OCT 28 AM 9: 07

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

GRANGE INSURANCE ASSOCIATION, )
a Washington corporation, )
          )
       Respondent, )
          )
       v. )
          )
ELIZABETH and WESLEY ROBERTS, )
husband and wife, and the marital )
community composed thereof; )
          )
       Appellants, )
          )

NO. 69356-5-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: October 28, 2013

LAU, J. — An insurer's duty to defend arises "if the insurance policy conceivably covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy actually covers the insured's liability." Woo v. Fireman's Fund Ins. Co., 161 Wn.2d 43, 53, 164 P.3d 454 (2007) (emphasis omitted). Grange Insurance Association issued an insurance policy to Jane and Wes Roberts.[1] The policy imposes on Grange a duty to defend its insureds but excludes intentional conduct from the duty to defend. Rebecca Brandis sued Roberts, alleging various torts stemming from Roberts's intentional conduct. The trial court ruled in a declaratory judgment action that Grange

---

[1] We refer to Jane and Wes collectively as "Roberts."

owed Roberts no duty to defend against the Brandis complaint. Because Roberts's insurance policy provides no conceivable coverage for the allegations in the Brandis complaint, the trial court properly granted declaratory judgment in Grange's favor.

## FACTS

This coverage dispute began with litigation between siblings. That Trust and Estate Dispute Resolution Act (TEDRA) lawsuit involved sisters Rebecca Brandis, Suella Hershaw, Myra Converse, and Myrna Seifert[2] against their sister, Jane Roberts, and her husband, Wes. Brandis sought to set aside transfers of real and personal property their now deceased mother, Elizabeth, made to Roberts. The Brandis complaint also sought damages alleging that Roberts obtained the property transfers by engaging in fraudulent acts, exerting undue influence over their mother, "actively interfer[ing]" with their mother, and making false statements and "bad mouth[ing]" them. The complaint also alleged that Roberts's conduct resulted in the loss of an expected inheritance, loss of a parent-child relationship, and emotional distress/outrage.

Regarding interference and outrage, the complaint alleged:

> Jane isolated Elizabeth from her longtime friends and family. Jane actively interfered with the relationship between Elizabeth and her family and friends, including her other children. Jane made false statements about and "badmouthed" those other parties in order to so intentionally interfere with their relationships. Jane's behavior towards the other family members, including making false accusations regarding prior child abuse claims, went beyond the bounds of decency, atrocious, and intolerable. The family and friends experienced extreme emotional distress as a result of Jane's interference with their relationships with Elizabeth, which were adversely affected.

---

[2] We refer to these sisters collectively as "Brandis."

69356-5-I/3

The complaint's request for relief sought, among other things, "a judgment for damages based on [Roberts's] tortious interference with expected inheritance," "a judgment for damages based on [Roberts's] tortious interference with the parent/child relationship," and "a judgment for damages based on outrage caused by [Roberts's] outrageous conduct which proximately caused severe emotional distress."

Roberts's Grange policy provisions provide coverage—subject to certain exclusions—for bodily injury and property damage liability (coverage H) and personal and advertising injury liability (coverage I). Coverage H provides in relevant part:

> COVERAGE H – BODILY INJURY AND PROPERTY DAMAGE LIABILITY
> 1. Insuring Agreement
>    a. We will pay those sums that an insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend an insured against any suit seeking those damages.
>       However, we will have no duty to defend an insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply.
>          . . . .
>    b.  This insurance applies to bodily injury and property damage only if:
>        (1) The bodily injury or property damage is caused by an occurrence . . . .
>          . . . .
> 2. Exclusions
>    This insurance does not apply to:
>    a. Expected Or Intended Injury
>       Bodily injury or property damage expected or intended from the standpoint of an insured. . . .
> SECTION V – DEFINITIONS
> . . . .
> 2. Bodily injury means bodily injury, sickness or disease sustained by a person, and includes death resulting from any of these at any time.
> . . . .
> 17. Occurrence means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

69356-5-I/4

Coverage I provides in relevant part:

COVERAGE I – PERSONAL AND ADVERTISING INJURY LIABILITY
1. Insuring Agreement
    a. We will pay those sums that an insured becomes legally obligated to pay as damages because of personal and advertising injury to which this insurance applies. We will have the right and duty to defend an insured against any suit seeking those damages.
    However, we will have no duty to defend an insured against any suit seeking damages for personal and advertising injury to which this insurance does not apply.
    . . . .
2. Exclusions
    This insurance does not apply to personal and advertising injury:
    a. Knowing Violation Of Rights Of Another
    Caused by or at the direction of an insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury.
    b. Material Published With Knowledge Of Falsity
    Arising out of oral or written publication of material, if done by or at the direction of an insured with knowledge of its falsity.
    . . . .
SECTION V – DEFINITIONS
    . . . .
18. Personal and advertising injury means injury, including consequential bodily injury, arising out of one or more of the following offenses:
    . . . .
    d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products, or services.
    e. Oral or written publication, in any manner, of material that violates a person's right of privacy.

In June 2010, Roberts tendered defense of the Brandis lawsuit to Grange. Grange accepted the tender under a full reservation of rights and retained defense attorney Tom Heller to represent Roberts. Grange informed Roberts that their policy may not provide coverage and asserted its right to "file a declaratory judgment action

-4-

asking a court of law to determine that Grange has no duty to defend the potential lawsuit and/or to pay any judgment or settlement of the claims being asserted."

In September 2010, Grange filed an action for declaratory relief seeking a determination of its duty to defend and indemnify Roberts in the underlying action. The complaint alleged that Grange had no duty to defend or indemnify Roberts because no "occurrence" happened as defined under the insurance policy, some or all of Brandis's claims alleged no "bodily injury" or "property damage" within the policy's coverage, and exclusions applied to those claims falling under "bodily injury," "property damage," or "personal and advertising injury." Summonses were sent to Roberts and each of the Brandis plaintiffs in the underlying suit.[3]

In June 2011, Roberts filed an answer, affirmative defenses, and a counterclaim alleging bad faith by Grange. The counterclaim alleged, "By filing the Coverage Action, Grange has breached its fiduciary duties to [Roberts] and committed the tort of insurance bad faith. For Grange to prevail in the Coverage Action, Grange will necessarily be required to allege facts that, if proved true, would be detrimental to [Roberts's] defense in the Underlying Tort Action." Roberts argued, "By seeking to prevail in the Coverage Action, Grange will effectively be helping Jane's siblings to prove their case against her in the Underlying Tort Action."

---

[3] In January 2011, attorney Heller requested that Grange delay its declaratory judgment action so that a planned motion for summary judgment in the underlying action could be heard. Grange agreed and delayed prosecution of its declaratory judgment action until after the underlying motion for summary judgment was heard.

Grange moved for summary judgment, requesting a ruling that it had no duty to defend Roberts in the underlying action. Roberts filed an opposition and a cross motion to stay. The basis for the motion to stay was the same as that asserted in Roberts's counterclaim: "Any attempt by Grange to offer proof that Jane possessed the intent required to invoke the exclusions at issue would work directly against [Roberts's] efforts to avoid liability in the underlying action, and would therefore constitute bad faith."

The court granted Grange's summary judgment motion in July 2011:

> [The court] DECLARES that the claims being made against defendants [Jane] and "John Doe" Roberts in the underlying action of Brandis, et. al. v. Elizabeth Roberts, et. al., Snohomish County Cause No. 08-4-00999-3 do not trigger coverage under Grange's Policy No. FP01010054 and, thus, that Grange has no duty to indemnify, or to continue providing a defense to Roberts for the claims being made in the underlying [case]. Consequently, Grange may cease providing a defense to Roberts.

The court's order did not specifically address Roberts's counterclaim. The parties agree that by considering and ruling on the summary judgment motion, the trial court implicitly denied Roberts's cross motion to stay.

Shortly after the court determined Grange had no duty to defend, Roberts tendered defense to a second insurer, Unigard Insurance Company. Unigard defended under a reservation of rights for a period of time, but is no longer providing coverage.

More than a year after the trial court granted Grange's summary judgment motion, Roberts asserted that the July 2011 order was not a final order because the bad faith counterclaim was never formally dismissed. Grange filed a motion for clarification of the court's summary judgment order. Grange argued that the court effectively dismissed Roberts's counterclaim when it denied the motion to stay and it was only a

"ministerial error that the [summary judgment] order did not so state." Report of Proceedings (RP) (Sept. 21, 2012) at 5. Grange moved the court to amend its prior summary judgment order to indicate it was a final order dismissing Roberts's counterclaim. In September 2012, the court denied Grange's motion for clarification and formally dismissed Roberts's counterclaim "w/prejudice [and] this is the final order of the court."

## ANALYSIS[4]

### Standard of Review

We review a summary judgment order de novo, performing the same inquiry as the trial court and considering facts and reasonable inferences in the light most favorable to the nonmoving party. Jones v. Allstate Ins. Co., 146 Wn.2d 291, 300, 45

---

[4] Grange contends that collateral estoppel bars this appeal because Unigard subsequently obtained the same order as did Grange and Roberts failed to appeal that order. The details of the Unigard claim are not in the record on appeal. The parties conveyed only limited information to the trial court regarding the Unigard litigation. See Clerk's Papers (CP) at 368-69 (Roberts's declaration stating that Unigard defended under a reservation of rights and brought a summary judgment motion against them in June 2012); CP at 376 (in its motion for clarification, Grange informed the trial court that Roberts, in response to Unigard's motion for summary judgment, asserted that the Grange litigation was not complete because Roberts's counterclaim against Grange had not been dismissed); RP (Sept. 21, 2012) at 3 (during oral argument on motion for clarification, trial court was advised that Unigard was no longer providing coverage).

Collateral estoppel, also known as issue preclusion, bars relitigation of issues of ultimate fact that have been determined by a final judgment in actions involving the same parties. State v. Williams, 132 Wn.2d 248, 253-54, 937 P.2d 1052 (1997). Collateral estoppel must not be applied to work an injustice. "The question is always whether the party to be estopped had a full and fair opportunity to litigate the issue." State Farm Mut. Auto. Ins. Co. v. Avery, 114 Wn. App. 299, 304, 57 P.3d 300 (2002). On this limited record, we cannot determine that Roberts had a full and fair opportunity to litigate the coverage issue in the Unigard case.

P.3d 1068 (2002). Summary judgment is proper if no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. CR 56(c).

Similarly, the construction of an insurance contract is a question of law. State Farm Gen. Ins. Co. v. Emerson, 102 Wn.2d 477, 480, 687 P.2d 1139 (1984); Bordeaux, Inc. v. Am. Safety Ins. Co., 145 Wn. App. 687, 694, 186 P.3d 1188 (2008). Courts construe insurance policies as contracts. Austl. Unlimited, Inc. v. Hartford Cas. Ins. Co., 147 Wn. App. 758, 765, 198 P.3d 514 (2008). We consider the policy as a whole and give it a "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'" Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wn.2d 654, 666, 15 P.3d 115 (2000) (quoting Am. Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co., 134 Wn.2d 413, 427-28, 951 P.2d 250 (1998)). "[I]f the policy language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists." Austl. Unlimited, 147 Wn. App. at 765-66. A policy is ambiguous only if its provisions are susceptible to two different interpretations, both of which are reasonable. Allstate Ins. Co. v. Peasley, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997). We resolve ambiguity in favor of the insured. Moeller v. Farmer's Ins. Co. of Wash., 173 Wn.2d 264, 272, 267 P.3d 998 (2011). When interpreting insurance policies, we are bound by the definitions provided in the policy. Austl. Unlimited, 147 Wn. App. at 766.

Duty to Defend

In Washington, "'[t]he duty to defend is different from and broader than the duty to indemnify.'" Edmonson v. Popchoi, 172 Wn.2d 272, 282, 256 P.3d 1223 (2011)

(quoting <u>Am. Best Food, Inc. v. Alea London, Ltd.</u>, 168 Wn.2d 398, 404, 229 P.3d 693

(2010)). In <u>Woo v. Fireman's Fund Insurance Co.</u>, 161 Wn.2d 43, 164 P.3d 454 (2007),

our Supreme Court summarized the law governing an insurer's duty to defend:

> The duty to defend "arises at the time an action is first brought, and is based on the potential for liability." <u>Truck Ins. Exch. v. VanPort Homes, Inc.</u>, 147 Wn.2d 751, 760, 58 P.3d 276 (2002) (emphasis added). An insurer has a duty to defend 'when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" <u>Id.</u> (quoting <u>Unigard Ins. Co. v. Leven</u>, 97 Wn. App. 417, 425, 983 P.2d 1155 (1999)). An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy." <u>Id.</u> (citing <u>Kirk v. Mt. Airy Ins. Co.</u>, 134 Wn.2d 558, 561, 951 P.2d 1124 (1998)). Moreover, if a complaint is ambiguous, a court will construe it liberally in favor of "triggering the insurer's duty to defend." <u>Id.</u> (citing <u>R.A. Hanson Co. v. Aetna Ins. Co.</u>, 26 Wn. App. 290, 295, 612 P.2d 456 (1980)). In contrast, the duty to indemnify "hinges on the insured's <u>actual liability</u> to the claimant and <u>actual coverage</u> under the policy." <u>Hayden [v. Mut. of Enumclaw Ins. Co.]</u>, 141 Wn.2d [55,] 64[, 1 P.3d 1167 (2000)] (emphasis added). In sum, the duty to defend is triggered if the insurance policy <u>conceivably covers</u> the allegations in the complaint, whereas the duty to indemnify exists only if the policy <u>actually covers</u> the insured's liability.
>
> "There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured." <u>Truck Ins.</u>, 147 Wn.2d at 761. First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer <u>must</u> investigate and give the insured the benefit of the doubt that the insurer has a duty to defend. <u>Id.</u> Notice pleading rules, which require only a short and plain statement of the claim showing that the pleader is entitled to relief, impose a significant burden on the insurer to determine if there are <u>any</u> facts in the pleadings that could conceivably give rise to a duty to defend. <u>Hanson</u>, 26 Wn. App. at 294. Second, if the allegations in the complaint ""conflict with facts known to or readily ascertainable by the insurer,'"" or if ""the allegations . . . are ambiguous or inadequate,'"" facts outside the complaint may be considered. <u>Truck Ins.</u>, 147 Wn.2d at 761 (quoting <u>Atl. Mut. Ins. Co. v. Roffe, Inc.</u>, 73 Wn. App. 858, 862, 872 P.2d 536 (1994) (quoting <u>E-Z Loader Boat Trailers, Inc. v. Travelers Indem. Co.</u>, 106 Wn.2d 901, 908, 726 P.2d 439 (1986))). The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty. <u>Id.</u>
>
> . . . . Although the insurer must bear the expense of defending the insured, by doing so under a reservation of rights and seeking a declaratory

judgment, the insurer avoids breaching its duty to defend and incurring the potentially greater expense of defending itself from a claim of breach. Id.

Woo, 161 Wn.2d at 52-54 (footnote omitted). In sum, "'if there is any reasonable interpretation of the facts or the law that could result in coverage, the insurer must defend.'" Edmonson, 172 Wn.2d at 282 (quoting Alea, 168 Wn.2d at 405). Once an event triggers the duty to defend, insurers may not desert policyholders while awaiting an indemnity determination. Alea, 168 Wn.2d at 405. The obligation encompasses any claim that might be covered under any permissible construction of the policy. Baugh Constr. Co. v. Mission Ins. Co., 836 F.2d 1164, 1168 (9th Cir. 1988) (applying Washington law); Travelers Ins. v. N. Seattle Christian & Missionary Alliance, 32 Wn. App. 836, 839-40, 650 P.2d 250 (1982).

Policy Coverage

Roberts argues, "The Brandis complaint triggers [Grange's] duty to defend because it alleges defamation, outrage, tortious interference with expected inheritance and tortious interference with a parent/child relationship, all of which claims are potentially covered by the policy." Appellant's Br. at 16 (formatting omitted). Under the principles in Woo and the authority it cites, Grange's duty to defend triggered if the Brandis complaint, construed liberally, alleged facts that could, if proven, impose liability upon Roberts within the policy's coverage. Woo, 161 Wn.2d at 52-53. Relief is unavailable to Grange unless the claim alleged in the complaint is clearly not covered by the policy. Woo, 161 Wn.2d at 53. The parties do not dispute that the policy expressly excludes coverage for intentional acts.

69356-5-I/11

## Outrage

Roberts contends that the outrage allegation falls within Grange's policy coverage for bodily injury and property damage. This question depends on whether Brandis's alleged injuries constitute an "occurrence" under the terms of the policy. Under the policy, an "occurrence" means an accident, including exposure to conditions which results in (a) bodily injury or (b) property damage.

Brandis alleged bodily injury in the form of outrage. To establish a claim for the tort of outrage—also known as intentional infliction of emotional distress—the plaintiff must show that (1) he or she suffered severe emotional distress; (2) the emotional distress was inflicted intentionally or recklessly, but not negligently;[5] (3) the conduct complained of was outrageous and extreme; and (4) he or she personally was the subject of the outrageous conduct. Janaszak v. State, 173 Wn. App. 703, 736, 297 P.3d 723 (2013). The defendant's conduct must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Reid v. Pierce

---

[5] Conduct is reckless when a person "knows of and disregards a substantial risk that a wrongful act may occur and his or her disregard of such substantial risk is a gross deviation from conduct that a reasonable man would exercise in the same situation." RCW 9A.08.010(1)(c).

Negligent infliction of emotional distress is a limited, judicially created cause of action that allows a family member to recover for "foreseeable" intangible injuries caused by viewing a physically injured loved one shortly after a traumatic accident. Colbert v. Moomba Sports, Inc., 163 Wn.2d 43, 49, 176 P.3d 497 (2008). No party argues that Brandis alleged negligent infliction of emotional distress in the underlying complaint.

-11-

County, 136 Wn.2d 195, 202, 961 P.2d 333 (1998) (emphasis omitted) (quoting

Grimsby v. Samson, 85 Wn.2d 52, 59, 530 P.2d 291 (1975)).

Relying on Woo, Roberts argues that even if her conduct was intentional, it is

conceivable that her conduct resulted in unintended injuries to Brandis. In Woo, the

insured dentist inserted boar tusks into his patient's mouth while she was under

anesthesia and took humiliating photographs of the prank. The dentist's staff gave the

photographs to the patient. Woo, 161 Wn.2d at 63-64. The patient sued the dentist,

alleging bodily injury resulting from both negligent and intentional conduct. Woo, 161

Wn.2d at 63. The dentist's insurer argued that his general liability policy excluded

coverage for the boar tusk prank because that conduct was clearly "intentional." Woo,

161 Wn.2d at 63. The relevant policy language provided defense coverage for bodily

injury caused by an "occurrence," which was defined as "[a]n accident, including

continuous or repeated exposure to substantially the same general harmful conditions."

Woo, 161 Wn.2d at 63 (alteration in original). The policy also defined "accident" as a

"'fortuitous circumstance, event or happening that takes place and is neither expected

nor intended from the standpoint of the insured.'" Woo, 161 Wn.2d at 63.

Our Supreme Court construed the unique policy language at issue to hold that

the plaintiff's complaint alleged claims that were conceivably covered by the dentist's

policy. Woo, 161 Wn.2d at 64-65. The court's analysis depended heavily on the

policy's definition of "accident:"

> Woo's policy covers bodily injury that is caused by an "accident," which is
> defined as a "fortuitous circumstance, event or happening that takes place and is
> neither expected nor intended from the standpoint of the insured." NSW at

000043 (emphasis added). The Court of Appeals limited its analysis of the bodily injury coverage to whether Alberts' complaint alleged exclusively intentional conduct. However, based on the language of Woo's policy, he had to have "expected or intended" the specific "event or happening" alleged in the complaint. Thus, he would have to have intended not only the "event or happening" of photographing her with the boar tusk flippers in her mouth but also the "event or happening" that Alberts would sustain the specific injuries she alleged in her complaint. Although Woo's conduct was likely intentional, it is conceivable that Woo did not intend that conduct to result in Alberts' injuries.

Moreover, Woo's policy covers "continuous or repeated exposure to substantially the same general harmful conditions." NSW at 000045. Woo's "taunts" and the practical joke could have been part of Woo's "continuous or repeated" efforts to cultivate a "friendly working environment" in the office. NSW at 000045; Br. of Resp'ts at 4-5.

Woo, 161 Wn.2d at 64 (emphasis added in part).

In Woo, the insurance policy's plain language required that Woo intend not only the event or happening that caused the injury, but also the injuries that resulted. Here, the definition of "occurrence" includes "accident." In contrast to the policy in Woo, the term "accident" is not defined in Grange's policy. We thus look to the common law definition. Safeco Ins. Co. of Am. v. Butler, 118 Wn.2d 383, 401, 823 P.2d 499 (1992). For purposes of liability insurance,

"an accident is never present when a deliberate act is performed unless some additional unexpected, independent and unforeseen happening occurs which produces or brings about the result of injury or death. The means as well as the result must be unforeseen, involuntary, unexpected and unusual."

Butler, 118 Wn.2d at 401 (quoting Detweiler v. J.C. Penney Cas. Ins. Co., 110 Wn.2d 99, 104, 751 P.2d 282 (1988)). An act is deliberate when it is "done with awareness of the implications or consequences of the act." Nationwide Ins. Co. v. Hayles, Inc., 136 Wn. App. 531, 538, 150 P.3d 589 (2007).

Where an insured acts intentionally but claims that the result was unintended, the incident is not an accident if the insured knew or should have known facts from which a prudent person would have concluded that the harm was reasonably foreseeable. State Farm Fire & Cas. Co. v. Parrella, 134 Wn. App. 536, 540, 141 P.3d 643 (2006). Stated another way, "[w]e define an outcome as accidental only if both the means and the result were 'unforeseen, involuntary, unexpected and unusual.'" Allstate Ins. Co. v. Bauer, 96 Wn. App. 11, 16, 977 P.2d 617 (1999) (quoting Grange Ins. Co. v. Brosseau, 113 Wn.2d 91, 96, 776 P.2d 123 (1989)). "[P]ursuant to the common sense definition, 'accident' is not a subjective term. Thus, the perspective of the insured as opposed to the tortfeasor is not a relevant inquiry. Either an incident is an accident or it is not." Roller v. Stonewall Ins. Co., 115 Wn.2d 679, 685, 801 P.2d 207 (1990), overruled on other grounds by Butzberger v. Foster, 151 Wn.2d 396, 89 P.3d 689 (2004).

Under the common law definition of "accident," a reasonably foreseeable harm resulting from deliberate conduct is not an "accident" and, thus, not an "occurrence" under the Grange policy language at issue. While Brandis could prove outrage by showing "reckless" conduct, the complaint's factual allegations, broadly construed, allege intentional conduct by Roberts. Even accepting Roberts's argument that she could have acted recklessly without intending the result, the complaint clearly alleged deliberate actions by Roberts. As defined above, to be reckless is to know of and disregard a substantial risk of harm. Roberts's actions could foreseeably result in the plaintiffs' severe mental distress. There is no coverage for Roberts's alleged conduct under the Grange policy's clear and explicit language because the conduct does not

constitute an "occurrence" within the meaning of the policy. The trial court properly determined that the Grange policy triggered no duty to defend the outrage claim.

An alternative ground also exists to affirm the trial court on this issue. We note that Washington courts consistently interpret "bodily injury" provisions in insurance policies to include claims for physical injury but exclude claims for purely nonphysical or emotional harm unrelated to a physical injury. Although neither party briefed this issue, "an appellate court may sustain a trial court on any correct ground, even though that ground was not considered by the trial court." Nast v. Michels, 107 Wn.2d 300, 308, 730 P.2d 54 (1986). Accordingly, this case can be decided as a matter of law based on whether the term "damages because of bodily injury" in Roberts's policy includes damages for emotional distress unrelated to physical injury. See Daley v. Allstate Ins. Co., 135 Wn.2d 777, 958 P.2d 990 (1998).

Cases in Washington and other jurisdictions recognize that damages for bodily injury include damages for emotional distress if that distress arises as a result of a physical injury. See Thompson v. Grange Ins. Ass'n, 34 Wn. App. 151, 161, 660 P.2d 307 (1983) (damages for loss of consortium allowed where a spouse suffers bodily injury and can no longer perform spousal functions); Michael Sean Quinn & L. Kimberly Steele, Insurance Coverage Opinions, 36 S. Tex. L. Rev. 479, 527 (1995) (mental anguish as a consequence of bodily injury is covered).

Here, the record contains no evidence or allegation of physical injury. Instead, Brandis alleged purely emotional injuries due to Roberts's statements and actions. Grange has a duty to defend Roberts against claims asserting "damages because of

bodily injury." As noted above, Grange's policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, and includes death resulting from any of these at any time." In Daley, our Supreme Court construed similar policy language in an underinsured motorist (UIM) policy defining "bodily injury" as "bodily injury, sickness, disease or death." Daley, 135 Wn.2d at 784. The court noted, "The clear majority of states, including Washington, have held that the term 'bodily injury' does not include damages for purely emotional injuries." Daley, 135 Wn.2d at 784-85 (footnote omitted). The court discussed its previous cases interpreting "bodily injury" in the insurance context:

> Washington follows the majority of jurisdictions which find that the term "bodily injury" does not encompass recovery for purely emotional injuries. In E-Z Loader [Boat Trailers, Inc. v. Travelers Indemnity Co., 106 Wn.2d 901, 726 P.2d 439 (1986)], this court considered whether an insured could recover for sex and age discrimination pursuant to a claim for wrongful discharge under her employer's comprehensive general liability policy which allowed recovery for "bodily injury." E-Z Loader, 106 Wash.2d at 903-06. The term "bodily injury" was defined in the general liability policy, similar to the present case, as "bodily injury, sickness or disease . . . ." Id. at 904. The court concluded that the employee coverage contemplated actual bodily injury, sickness or disease resulting in physical impairment, as contrasted to mental impairment. Id. at 908. The court reasoned that the terms "sickness" and "disease" were modified by the word "bodily" and therefore, "[m]ental anguish and illness, and emotional distress are not covered by the express terms of the . . . policy." Id. The court declined to stretch the policy to the point to where it would cover such problems.

Daley, 135 Wn.2d at 786.[6]

The court also cited with approval our decision in Northwest Farm Bureau Insurance Co. v. Roberts, 52 Wn. App. 888, 765 P.2d 328 (1988):

---

[6] The Daley court concluded the term "bodily" modifies the other terms in the definition of bodily injury. Daley, 135 Wn.2d at 787.

Division One of the Court of Appeals has followed E-Z Loader finding that, similar to the argument made in the present case, an insured's homeowners policy which allowed damages for "bodily injury" did not encompass an insured's claim for negligent infliction of emotional distress. Northwest Farm Bureau [Ins. Co. v. Roberts], 52 Wn. App. [888,] 891[,785 P.2d 328 (1988)]. Like the policy at issue here, the homeowners policy in Northwest Farm Bureau defined "bodily injury" as "physical harm, sickness or disease . . . ." Id. Thus, courts in Washington and elsewhere have found that coverage for "bodily injury" does not include claims for purely emotional distress and we find that the present case does not warrant a different result.

Daley, 135 Wn.2d at 787.

Here, Roberts's policy defines "bodily injury" in terms substantially similar to the definition of bodily injury discussed in Daley and the cases Daley cites. Those authorities construe such policy language to exclude emotional harm from coverage. Because the outrage claim alleges emotional harm, the Grange policy triggers no duty to defend under the bodily injury provisions.

### Tortious Interference Claims

Roberts contends the complaint alleged "two untested theories of tort recovery: (1) Tortious interference with expected inheritance and (2) tortious interference with the relationship between an adult child and parent." Appellant's Br. at 25. Roberts argues, "It is unknown whether or not the innovative tortious interference torts claimed by Brandis will, if recognized in Washington, require proof of intention to cause the consequential harm, or just proof of the intention to undertake the harmful act, or simply proof of reckless disregard or even merely negligence." Appellant's Br. at 26-27. Citing the rule that any uncertainty favors defense of the insured, Roberts contends that

-17-

"where the tort claimed is new to Washington, and could include elements that would be covered by the Policy, the Insurer must provide coverage." Appellant's Br. at 27.

Grange responds that although no Washington case has yet recognized the tort of interference with expected inheritance, the tort is a logical extension of Washington's already-recognized cause of action for tortious interference with an economic relationship. That tort requires a showing of intentional conduct. Grange cites as authority the jurisdictions that have adopted the tort of interference with expected inheritance. Those cases hold this tort is equivalent to a claim for tortious interference with an economic relationship. Grange claims the same logic applies to a minor child's claim of tortious interference with a parent-child relationship, a tort requiring intentional conduct. According to Grange, requiring a claimant to establish intentional conduct in the context of an adult child's interference claim is a logical extension of Washington's rule applicable to a minor child's claim.

Roberts "concede[s] that the overwhelming majority, and perhaps all, jurisdictions which have considered the two tortious interference claims (inheritance, adult child/parental relationship) require an intentional act." Appellant's Reply Br. at 8-9. Nevertheless, Roberts claims, "Unless and until a published Washington case sets forth the elements of the untested interference claims, the elements of those claims remain uncertain" and "uncertainty with respect to coverage must be resolved in favor of the insureds." Appellant's Reply Br. at 9.

Interference with Expected Inheritance

No Washington case has adopted the tort of interference with expected inheritance, although other jurisdictions have recognized this tort or extended the tort of interference with a business expectancy to include inheritance expectancy. Washington recognizes the tort of interference with a business or economic expectancy, which consists of five elements: (1) existence of a valid contractual relationship or business expectancy, (2) defendants had knowledge of that relationship, (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy, (4) defendants interfered for an improper purpose or used improper means, and (5) resultant damage. Leingang v. Pierce County Med. Bureau, Inc., 131 Wn.2d 133, 157, 930 P.2d 288 (1997); See also 6A WASHINGTON PATTERN JURY INSTRUCTION: CIVIL 352.02, at 477 (6th ed. 2012). Particularly important here, the tort requires intentional interference.

Multiple jurisdictions have adopted tortious interference with an expected inheritance and have uniformly held that the tort is equivalent to tortious interference with an economic relationship. See Lindberg v. U.S., 164 F.3d 1312, 1319 (10th Cir. 1999) ("The elements of the tort [of intentional interference with inheritance] are quite uniform across jurisdictions that have recognized it."); Allen v. Hall, 328 Or. 276, 282, 974 P.2d 199 (1999) ("Ultimately, an expectancy of inheritance is an interest that fits by logical extension within the concept underlying the tort of intentional interference with prospective economic advantage and, absent some legitimate reason for excluding it, may be deemed to be covered by that theory of recovery."); Sonja A. Soehnel, Liability

-19-

*in Damages for Interference with Expected Inheritance or Gift*, 22 A.L.R.4th 1229, § 3 (1983 & Supp. 2013) (summarizing cases).

Further, the Restatement (Second) of Torts describes "Intentional Interference with Inheritance or Gift" and lists cases in jurisdictions that recognize this tort. See RESTATEMENT (SECOND) OF TORTS § 774B (1979). The Restatement and those jurisdictions recognizing the tort agree that this is only an intentional tort and that it "does not purport to cover liability for negligence . . . ." RESTATEMENT (SECOND) OF TORTS § 774B cmt. a; *Allen*, 328 Or. at 282-85; *Harmon v. Harmon*, 404 A.2d 1020, 1024-25 (Me. 1979); *Peffer v. Bennett*, 523 F.2d 1323, 1325 (10th Cir. 1975); *Allen v. Leybourne*, 190 So. 2d 825, 828-29 (Fla. App. 1966). No jurisdiction has adopted a tort of negligent interference with an inheritance. See *Cardenas v. Schober*, 783 A.2d 317, 324 n.2 (Pa. Super. 2001).

Roberts agrees that Grange's policy excludes defense coverage for intentional torts but contends that because Washington has not yet recognized tortious interference with expected inheritance, we cannot be sure what its elements would be. Roberts claims that given this "uncertainty," Grange cannot rely on out-of-state authority to refuse a defense. Appellant's Br. at 27.

Our Supreme Court has rejected the argument that an insurer may refuse to defend based on its own interpretation of Washington case law. In *Woo*, the insurer relied on a formal written legal opinion by attorney Stephen G. Skinner, who advised that the insurer had no duty to defend based on two Washington Court of Appeals cases. *Woo*, 161 Wn.2d at 60. Skinner's opinion acknowledged, however, that neither

case was entirely on point and that a reviewing court might conclude they apply only in other contexts. Woo, 161 Wn.2d at 60. Our Supreme Court disapproved of the insurer's reliance on this "equivocal" legal advice:

> [The insurer's] reliance on Skinner's equivocal advice regarding the application of [the Court of Appeals cases] to this case flatly contradicts one of the most basic tenets of the duty to defend. The duty to defend arises based on the insured's potential for liability and whether allegations in the complaint could conceivably impose liability on the insured. Truck Ins., 147 Wn.2d at 760. An insurer is relieved of its duty to defend only if the claim alleged in the complaint is "clearly not covered by the policy." Id. Moreover, an ambiguous complaint must be construed liberally in favor of triggering the duty to defend.
>
> [The insurer] is essentially arguing that an insurer may rely on its own interpretation of case law to determine that its policy does not cover the allegations in the complaint and, as a result, it has no duty to defend the insured. However, the duty to defend requires an insurer to give the insured the benefit of the doubt when determining whether the insurance policy covers the allegations in the complaint. Here, [the insurer] did the opposite—it relied on an equivocal interpretation of case law to give itself the benefit of the doubt rather than its insured.

Woo, 161 Wn.2d at 60.

In Alea, our Supreme Court considered out-of-state authority when determining whether an insurer had a duty to defend. There, the insurance policy excluded "assault and battery" from the insurer's duty to defend. Alea, 168 Wn.2d at 406. The issue was whether postassault negligence by the insured's employees gave rise to a duty to defend. Alea, 168 Wn.2d at 407. Because Washington courts had not yet considered this factual scenario, the court turned to out-of-state authority. Alea, 168 Wn.2d at 407-08. The court recognized that "[m]any states have found a preassault/postassault distinction in analyzing 'assault and battery' exclusions." Alea, 168 Wn.2d at 407. After analyzing the out-of-state authority, the court recognized a "pattern of holding an insurer

to a duty to defend in the case of postassault negligence . . . ." Alea, 168 Wn.2d at 408.

As to its reliance on out-of-state cases, the court reasoned:

> [The insurer] contends that persuasive out-of-state precedent should not trump binding in-state law. We agree. However, as the Court of Appeals noted, Washington courts have yet to consider the factual scenario before us today. Evaluation of out-of-state cases was appropriate in deciding which rule to apply. The lack of any Washington case directly on point and a recognized distinction between preassault and postassault negligence in other states presented a legal uncertainty with regard to [the insurer's] duty. Because any uncertainty works in favor of providing a defense to an insured, [the insurer's] duty to defend arose when [the underlying plaintiff] brought suit against [the insured].

Alea, 168 Wn.2d at 408.

The court also analyzed several cases cited by the insurer and "disagree[d] that any causal connection whatsoever between an assault or battery and subsequent negligence would suffice to render the resultant injuries 'clearly not covered.'" Alea, 168 Wn.2d at 408-09. The court concluded:

> [The insurer's] interpretation of Washington law fails to persuade us that its interpretation of the contract is correct. We find persuasive precedent from other states that have found claims that the insured acted negligently after an excluded event are covered. Further, a balanced analysis of the case law should have revealed at least a legal ambiguity as to the application of an "assault and battery" clause with regard to postassault negligence at the time [the insured] sought the protection of its insurer, and ambiguities in insurance policies are resolved in favor of the insured. Because such ambiguity is to be resolved in favor of the insured, we hold that [the insurer's] policy afforded coverage for postassault negligence to the extent it caused or enhanced [the underlying plaintiff's] injuries.

Alea, 168 Wn.2d at 410-11 (citations omitted).

Under Alea, when Washington authority is silent regarding a particular claim or cause of action, courts may consider persuasive authority when determining an insurer's duty to defend. Alea did not end its duty to defend analysis when faced with a

novel tort claim. The court analyzed persuasive authority, discerned a trend, and imposed a duty to defend based on the existence of that trend and the lack of any Washington guidance. Alea held that the persuasive authority conflicted with the insurer's position, creating a legal uncertainty that triggered the duty. The court so held because the persuasive authority on which the insured relied showed that coverage could be triggered if Washington followed the trend established by the other jurisdictions. We are unpersuaded by Roberts's argument that the duty to defend triggers whenever a claimant alleges a novel tort theory.

Unlike in Alea, here, the persuasive authority supports the insurer's denial of the duty to defend. Roberts cites no authority to the contrary and concedes that "the overwhelming majority, and perhaps all, jurisdictions" recognizing this tort require an intentional act. Appellant's Reply Br. at 8. No legal uncertainty or ambiguity exists that requires construction in favor of the insured. To prevail on the interference claim, Brandis must prove intentional, not accidental, conduct. Further, Brandis made no allegation that Jane accidentally committed the tort. Brandis alleged that harm resulted from Jane's acts of "fraud, undue influence, and tortious interference." Read liberally in the context of the entire complaint, these allegations involve intentional or deliberate conduct. Because the Grange policy excludes intentional conduct, the trial court properly concluded that no duty to defend Roberts extends to Grange.

### Tortious Interference with Parent-Child Relationship

Alea also controls the resolution of this claim. While no Washington Supreme Court case precisely recognizes a cause of action for malicious interference with family

relations,[7] we have dealt with a minor child's claim in Waller v. State, 64 Wn. App. 318, 338, 824 P.2d 1225 (1992). There, we identified a "trend in the law" that began with our decision in Strode v. Gleason, 9 Wn. App. 13, 510 P.2d 250 (1973). The elements of a claim for tortious interference with a parent-child relationship are (1) the existence of a family relationship, (2) a wrongful interference with the relationship by a third person, (3) an intention on the part of the third person that such wrongful interference results in a loss of affection or family association, (4) a causal connection between the third parties' conduct and the loss of affection, and (5) that such conduct resulted in damages. Waller, 64 Wn. App. at 338 (citing Strode, 9 Wn. App. at 14-15. The intent element cannot be met by merely showing reckless conduct. Instead, as we explained in Waller, intent in the context of an alienation of affections claim requires the plaintiff to prove "malice—that is, an intent that [the plaintiff] lose the affection of" his or her family. Waller, 64 Wn. App. at 339.

Roberts claims that Washington has not yet recognized a cause of action for tortious interference with a parent-child relationship in the context of an adult child and argues without citation to authority that such "[u]ntested torts should trigger a duty to defend." Appellant's Reply Br. at 8 (boldface omitted). In addition to our discussion above, we note that Roberts provides no argument or citation to authority explaining why Washington would apply a different standard when the tort is committed against an adult child. To the contrary, our courts have refused to distinguish between adult and

---

[7] In Tyner v. State Department of Social and Health Services, 141 Wn.2d 68, 1 P.3d 1148 (2000), our Supreme Court permitted a parent to sue the state for damage to the parent-child relationship.

minor children when analyzing other torts. See Ueland v. Reynolds Metals Co., 103 Wn.2d 131, 132, 139-40, 691 P.2d 190 (1984) (holding that children have a separate cause of action for loss of parental consortium when a parent is injured through the negligence of another and refusing to limit recovery for loss of parental consortium to minor children dependent on the parent); Kramer v. Portland-Seattle Auto Freight, Inc., 43 Wn.2d 386, 397, 261 P.2d 692 (1953) (allowing a child in wrongful death action to recover for loss of parental consortium beyond the period of minority).

The tort of interference with a parent-child relationship cannot be committed accidentally or negligently. Further, as discussed above, Brandis did not allege accidental conduct. Brandis claimed that Jane "actively interfered" and "intentionally interfere[d]" with their relationships. These allegations encompass deliberate, intentional action.[8] The trial court properly concluded that no duty to defend Roberts against such allegations extended to Grange.

---

[8] As persuasive authority, see Drake v. Mutual of Enumclaw Insurance Co., 167 Or. App. 475, 1 P.3d 1065 (2000), which addressed facts remarkably similar to those in the present case. In Drake, the insureds (husband and wife) were sued by the wife's sister, who alleged that the insureds exerted undue influence over the wife's mother such that the mother disinherited the sister. Drake, 167 Or. App. at 477. The insurer, Mutual of Enumclaw, rejected the insured's tender of defense. Drake, 167 Or. App. at 477. The insureds sued for a judgment, declaring that Mutual had a duty to defend them, and Mutual moved for summary judgment, arguing that the insureds' claims "alleged only intentional conduct and, therefore, did not allege an 'occurrence' under the policies." Drake, 167 Or. App. at 477. The trial and appellate courts agreed with Mutual. In affirming, the Oregon Court of Appeals invoked the rule of inferred intent:

> Thus, even if it were theoretically possible to commit the civil wrongs of undue influence, breach of fiduciary duty, and interference with economic relations without intending to injure another person, allegations concerning the manner in which those wrongs were committed by plaintiffs may require the inference that harm was intended. . . .

Defamation

Roberts argues that Brandis's defamation allegation[9] falls within Grange's policy coverage for personal and advertising injury. Grange contends that the "knowing violation of rights of another" and "material published with knowledge of falsity" policy exclusions apply. Resp't's Br. at 17 (capitalization omitted).

Defamation is concerned with compensating the injured party for damage to reputation. Eastwood v. Cascade Broad. Co., 106 Wn.2d 466, 471, 722 P.2d 1295 (1986). A defamation plaintiff must show four essential elements: (1) falsity, (2) an unprivileged communication, (3) fault, and (4) damages. Demopolis v. Peoples Nat. Bank of Wash., 59 Wn. App. 105, 108, 796 P.2d 426 (1990). "The burden of proof on the element of fault depends on the nature of the defamed party." Demopolis, 59 Wn. App. at 108 n.1. When the defamed party is a public figure or public official, he or she must show that the defamatory statement was made with actual malice—that is, made with "actual knowledge of its falsity or with reckless disregard for its truth or falsity." Herron v. KING Broad. Co., 112 Wn.2d 762, 775, 776 P.2d 98 (1989). If the defamed

The claim for undue influence makes clear that plaintiffs intended to injure [the sister]."
Drake, 167 Or. App. at 482.

[9] We question whether Brandis's complaint adequately states a claim for defamation. While Brandis alleges that Jane made "false statements" and "false accusations" and "badmouthed" them, Brandis's request for relief mentions no defamation claim and requests no judgment for damages based on such a claim. See Ralph v. State Dep't of Natural Res., 171 Wn. App. 262, 266, 286 P.3d 992 (2012), review granted, 176 Wn.2d 1023 (2013) ("'The nature of a claim for relief is determined by the facts alleged in the complaint and as adduced thereunder, and by the relief requested.'" (emphasis added) (quoting Silver Surprize, Inc. v. Sunshine Mining Co., 74 Wn.2d 519, 522, 445 P.2d 334 (1968)).

party is a private figure, only negligence need be shown. Demopolis, 59 Wn. App. at 108 n.1. In the defamation context, negligence means that the defendant "'knew or, in the exercise of reasonable care, should have known that the statement was false or would create a false impression in some material respect.'" Maison de France, Ltd. v. Mais Oui!, Inc., 126 Wn. App. 34, 44, 108 P.3d 787 (2005) (quoting Vern Sims Ford, Inc. v. Hagel, 42 Wn. App. 675, 680, 713 P.2d 736 (1986)).

As discussed above, the complaint alleges:

> Jane actively interfered with the relationship between Elizabeth and her family and friends, including her other children. Jane made false statements about and "badmouthed" those other parties in order to so intentionally interfere with their relationships. Jane's behavior towards the other family members, including making false accusations regarding prior child abuse claims, went beyond the bounds of decency, atrocious, and intolerable.

Roberts first contends that Grange's "Knowing Violation of Rights of Another" exclusion does not apply. That provision excludes personal and advertising injury "[c]aused by or at the direction of an insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury." Roberts argues,

> The exclusion does not apply. The underlying Complaint does not allege that Mrs. Roberts knew both that her alleged defamation would violate the rights of another and would slander Brandis. At most, the Complaint urges that Mrs. Roberts "actively" and "intentionally" interfered with relationships by "badmouthing" the underlying plaintiffs. Grange casually applies the Brandis allegation of intentionality to the slander, but the Complaint itself only references the intentionality with respect to the charge of interference with relationships.

Appellant's Br. at 19 (citations omitted); see also Appellant's Reply Br. at 10. Roberts thus contends that because the complaint does not allege Jane acted intentionally in

making false statements and "badmouthing" the other parties, the defamation claim, construed liberally, conceivably alleges negligent rather than intentional conduct.

For similar reasons, Roberts also contends that Grange's exclusion for "Material Published With Knowledge Of Falsity" does not apply. That provision excludes personal and advertising injury "[a]rising out of oral or written publication of material, if done by or at the direction of an insured with knowledge of its falsity." Roberts argues that the complaint fails to allege that she knew her alleged statements were false. Thus, a negligence standard applies.

The complaint, read liberally in its entire context, alleges intentional and deliberate conduct. As to the defamation claim, the complaint alleges that Roberts made false statements about the other parties that went beyond the bounds of decency "in order to so intentionally interfere with their relationships." The complaint states no prima facie claim of negligence and solely refers to intentional, deliberate conduct. To state a claim for negligence, the underlying complaint must allege facts that support a conclusion that the conduct was negligent. See McLeod v. Grant County Sch. Dist. No. 128, 42 Wn.2d 316, 319, 255 P.2d 360 (1953) ("In order to state a cause of action for negligence, it is necessary to allege facts which would warrant a finding that the defendant has committed an unintentional breach of a legal duty, and that such breach was a proximate cause of the harm."). The complaint states no such facts. Read in context, the complaint alleges only intentional torts and, thus, Roberts's knowledge of the falsity of her statements may be implied. See Margoles v. Hubbart, 111 Wn.2d 195,

-28-

215, 760 P.2d 324 (1988) ("evidence of hostility or spite is clearly relevant" in determining whether defamation defendant acted with knowledge of falsity).

Further, the allegation of intent and calculation to injure ("in order to so intentionally interfere") implies that regardless of whether Roberts knew her statements were false, she made the statements knowing that Brandis's rights would be violated and that personal and advertising injury would occur. The complaint alleged more than merely false statements. It alleged that Roberts made false statements for a specific tortious purpose. Relevant here, the policy defines personal and advertising injury as "injury . . . arising out of . . . [o]ral or written publication, in any manner, of material that slanders or libels a person . . . ."[10] The complaint clearly alleges that the injury arising out of Roberts's false statements was intentional interference in Brandis's family relationships. Read in context, the complaint alleges conduct indicating that Roberts intended and knew that her statements would cause interference in Brandis's personal relationships (thus violating Brandis's rights). Under the policy's plain language, this interference injury is "personal and advertising injury" because it arose from a statement that allegedly slandered Brandis, i.e., "tend[ed] to injure the reputation of a person referred to in it." BLACK'S LAW DICTIONARY 449 (8th ed. 1999). Under the facts alleged, Roberts intended the statements to injure Brandis's reputation with respect to their mother and intended the damaged reputation to result in relationship injury. Grange's

---

[10] Black's Law Dictionary defines "slander" as "[a] defamatory assertion expressed in . . . speech." BLACK'S LAW DICTIONARY 1421 (8th ed. 1999). It defines "defamatory statement" as "[a] statement that tends to injure the reputation of a person referred to in it." BLACK'S LAW DICTIONARY 449 (8th ed. 1999).

policy excludes such conduct from the duty to defend.[11] The trial court properly granted summary judgment on the defamation claim.

<u>Separate Versus Community Liability</u>

In her reply brief, Roberts contends for the first time that Grange's policy applies separately to each insured. Roberts contends Grange owes Roberts a defense because the complaint alleges tortious conduct committed by only Jane Roberts, and which benefited her own separate property.

An appellate court "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a); <u>Roberson v. Perez</u>, 156 Wn.2d 33, 39, 123 P.3d 844

---

[11] <u>Woo</u>, discussed above, does not require a different result. There, regarding the policy's general liability provision for bodily injury, the dentist argued that the plaintiff's complaint "should be construed liberally in his favor as triggering a duty to defend because the complaint alleged both intentional and negligent conduct resulting in bodily injury." <u>Woo</u>, 161 Wn.2d at 63. The complaint alleged conduct that was "likely intentional" but also alleged three negligent causes of action. <u>Woo</u>, 161 Wn.2d at 64. The court relied heavily on the specific bodily injury policy exclusion language requiring that the dentist intend both the event or happening of photographing the plaintiff with boar tusk flippers but also the injuries that resulted, and concluded that under the facts alleged, it was conceivable that the dentist did not intend his conduct to result in the plaintiff's injuries. <u>Woo</u>, 161 Wn.2d at 64.

Regarding the insurance policy's "[e]mployment practices liability provision," Woo claimed that Fireman's had a duty to defend because the plaintiff's complaint could "reasonably be read to include allegations of negligent acts that led to an involuntary or constructive discharge." <u>Woo</u>, 161 Wn.2d at 61. The court disagreed, concluding that the facts alleged did not meet the definition of wrongful discharge under the insurance policy. Thus, "Fireman's had no duty to defend under [the dentist's] employment practices liability provision because [the plaintiff's] complaint clearly did not allege actions that met the definition of wrongful discharge under the policy." <u>Woo</u>, 161 Wn.2d at 62.

Unlike in <u>Woo</u>, here, the complaint contains no negligent causes of action and cannot reasonably be interpreted to include allegations of negligent acts. Our determination is heavily dependent on the precise wording of the policy, as was the determination in <u>Woo</u> (interpreting different policy language). On these facts, Grange owes no duty to defend.

(2005). Further, we do not consider issues argued for the first time in the reply brief. In re Marriage of Sacco, 114 Wn.2d 1, 5, 784 P.2d 1266 (1990). The reply brief is limited to a response to the issues in the responding brief. To address issues argued for the first time in a reply brief is unfair to the respondent and inconsistent with the rules on appeal. RAP 10.3(c); State v. Hudson, 124 Wn.2d 107, 120, 874 P.2d 160 (1994). We therefore decline to consider this argument.

### Dismissal of Counterclaim

Roberts contends the court erred in dismissing the bad faith counterclaim. As discussed above, over a year after the trial court granted summary judgment in Grange's favor, it entered an order formally dismissing Roberts's bad faith counterclaim. The court dismissed the counterclaim after a hearing on Grange's motion to clarify the summary judgment order. At the hearing, Grange requested that the court enter an order nunc pro tunc dismissing Roberts's counterclaim as of July 22, 2011, when Grange's summary judgment motion was granted and Roberts's motion to stay—based on the same grounds as the counterclaim—was implicitly denied. Roberts opposed Grange's motion, arguing that the request for a nunc pro tunc order was simply a gambit to deny Roberts the opportunity to appeal. When the court asked Roberts's counsel, "On what basis can your claim of bad faith go forward," counsel responded,

> I am not prepared to argue whether there is a basis or not, but I will assume for the purposes of this argument that the counterclaim cannot go forward. The question is whether or not the Court has dismissed the counterclaim or not. I could enter into an agreed order today that the counterclaim is dismissed, and I would have no problem doing that. What I have a problem with is the suggested language in Grange's order which seems to provide for a retroactive dismissal of

the counterclaim and, therefore, the entire case with finality which is an attempt to preclude my clients from appealing the order on summary judgment.

The fact is that an appeal lies when a final judgment has been entered. Final judgment has not been entered, and, therefore, I would ask that your court deny their form of the order. And I would be happy to work with counsel on an agreed order on the counterclaim as of today's date.

RP (Sept. 21, 2012) at 4-5.

Counsel and the court then engaged in the following discussion:

[COUNSEL]: The prejudice is the loss of the right to appeal.

. . . Grange could have and should have, perhaps, asked the Court to dismiss the counterclaim. It did not. The counterclaim simply wasn't dismissed. There's nothing in this record indicating that it was, in fact, dismissed except for a logical and legal conclusion that because the summary judgment was granted, therefore, logically, and by necessity, the counterclaim could not stand. But that is not a logical - -

THE COURT: Isn't that form over substance, though? Isn't that just putting form over substance, something that even CR 1 guides us not to do.

[COUNSEL]: Of course not. I don't believe so.

THE COURT: Nothing exists in the counterclaim.

[COUNSEL]: And you can so find right now.

THE COURT: It didn't exist as of July of 2011.

[COUNSEL]: But the Court did not find that as of July 2011.

THE COURT: I found it by implication. I found it by application.

. . . .

THE COURT: I am not prepared to enter an order nunc pro tunc amending a July order.

I think we would - - I'm prepared to take her up on her offer that the matter is dismissed. The counterclaim. Or else I can sign an order denying the clarification and leave this thing open. Frankly, I think they're going to be hard-pressed to convince the Court of Appeals that they have any appellate rights on a claim that hasn't existed by operation of law.

RP (Sept. 21, 2012) at 7-9. Counsel indicated she would be "happy if the Court formally dismissed the counterclaim." RP (Sept. 21, 2012) at 9. The court then entered an order formally dismissing the counterclaim.

On appeal, Roberts claims that because the trial court's dismissal order articulates no basis for its decision, "[t]he inference is that the trial court concluded that a counterclaim for bad faith could not proceed where the Insurer prevailed in the coverage action." Appellant's Br. at 30.

The record indicates Roberts never presented argument or evidence to the trial court regarding why the counterclaim had merit or should not be dismissed. See CP 281-85 (Roberts's response to Grange's motion for clarification). The September 21, 2012 hearing transcript clearly shows that the issue raised at the hearing was whether the counterclaim was formally dismissed for appeal purposes. Even when prompted by the court, Roberts gave no basis for allowing the bad faith counterclaim to go forward. Roberts's counsel clearly asked the court to formally dismiss the counterclaim so that Roberts could appeal the summary judgment order. The court noted it could either dismiss the counterclaim or leave it open, to which counsel responded, "I'd [be] happy if the Court formally dismissed the counterclaim." RP (Sept. 21, 2012) at 9. Roberts did not ask the court to leave the matter open, consider the counterclaim's merits, or address it other than to dismiss it. Roberts also failed to refute Grange's argument that when the court denied the motion to stay, it "implicitly found that the factual basis for the counterclaim wasn't true." RP (Sept. 21, 2012) at 8.

We "may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a); Roberson, 156 Wn.2d at 39. Roberts raised none of her appellate arguments at the trial court's dismissal hearing, and we can decline to consider them on appeal. Roberts also specifically asked the court to formally dismiss the counterclaim

-33-

rather than keep the claim open. Under the invited error doctrine, a party may not set up an error at trial and then complain of it on appeal. In re Pers. Restraint of Thompson, 141 Wn.2d 712, 723, 10 P.3d 380 (2000). The doctrine applies when a party takes affirmative and voluntary action that induces the trial court to take an action that party later challenges on appeal. Thompson, 141 Wn.2d at 723-24. Roberts cannot complain that the trial court dismissed the counterclaim for the "wrong reason" when she (1) affirmatively asked the court to dismiss the claim rather than keep it open and (2) failed to argue the merits of the claim when prompted by the court.[12] We decline to address the counterclaim's merits.

Attorney Fees and Costs

Roberts request an award of attorney fees and costs on appeal, citing RAP 18.1 and Olympic Steamship Co. v. Centennial Insurance Co., 117 Wn.2d 37, 52-53, 811

---

[12] Roberts cites Lavigne v. Chase, Haskell, Hayes, & Kalamon, P.S., 112 Wn. App. 677, 50 P.3d 306 (2002), to argue that she did not "set up" an error. There, the respondent argued that the appellant invited dismissal when it conceded to the trial court that an adverse evidentiary ruling "eviscerated" its case and that summary judgment was appropriate. Lavigne, 112 Wn. App. at 681. We held that the invited error doctrine did not apply in those circumstances:

> The doctrine does not apply here because [appellant] did not "set up" an error. When the verbatim of the summary judgment hearing is viewed in context, it is apparent [appellant] felt compelled by the trial court's negative evidentiary ruling to go along with resolution by summary judgment. [Appellant] did not concede the merits of its case, and the trial court agreed on that point. It would be unfair to characterize [appellant's] counsel's exasperated comment that the trial court's evidentiary ruling "eviscerated" [appellant's] case as constituting a waiver of the merits of their case.

Lavigne, 112 Wn. App. at 682.

The facts here are different. Roberts clearly asked the court to dismiss the counterclaim so she could appeal the summary judgment ruling. Roberts affirmatively chose not to present the counterclaim's merits and declined the trial court's offer to keep the matter open. This constitutes invited error.

P.2d 673 (1991). <u>Olympic Steamship</u> provides that an insured successfully suing an insurer to obtain coverage may also recover reasonable attorney fees necessarily incurred in the endeavor. <u>See</u> <u>McRory v. N. Ins. Co. of New York</u>, 138 Wn.2d 550, 980 P.2d 736 (1999) (quoting <u>Olympic Steamship</u>, 117 Wn.2d at 52-53). Given our disposition, we deny Roberts's request for appellate attorney fees and costs.

CONCLUSION

Because the Brandis complaint, construed liberally, alleges no claims conceivably covered by the insurance policy Grange issued to Roberts, Grange had no duty to defend Roberts in the underlying action. We affirm summary judgment dismissal and deny Roberts attorney fees and costs on appeal.

_____
Fau, J.

WE CONCUR:

_____
Dwyer, J.

_____
Becker, J.