[No. 12773-7-III.    Division Three.    April 28, 1994.]

VALENE STOCKER, *Respondent*, v. LOREN MARVIN
STOCKER, ET AL, *Appellants*.

2

*Robert J. Doty*, for appellants.

*Jay A. Johnson* and *Davis Arneil Law Firm*, for respondent.

SWEENEY, A.C.J. — In 1965, Loren Marvin Stocker (Marvin) executed a statutory warranty deed to his father, Loren C. Stocker (Loren), transferring Marvin's property to Loren for $10, subject to an underlying mortgage. Loren agreed to return the property to Marvin after a tour of military service. Marvin did not ask for the property when he returned. His parents continued to live on the land, planting an orchard, making other permanent improvements, and eventually paying off the mortgage.

In 1990, Marvin's mother, Valene Stocker, wanted to sell the orchard; Loren insisted it belonged to Marvin. Over Valene's objection, Loren quitclaimed the property to Marvin in 1990. Valene brought this action to quiet title in the land, for ejectment, for an equitable lien and to avoid a personal property transfer. The court quieted title in Valene and Loren and ejected Marvin.

On appeal, Marvin contends the 1965 statutory warranty deed created an express trust, any interest Valene and Loren had in the property was subject to the trust, and the

trust was fully performed by the 1990 quitclaim deed back to Marvin. We affirm.

## I

### FACTS

The following facts are undisputed. In 1958 or 1959, Marvin received a parcel of land in Chelan County as a gift from his great-grandmother. At that time, the property was unimproved sagebrush. Between 1958 and 1965, Marvin and his wife, Betty, made improvements to the land and in the process executed a mortgage for $2,600 in favor of Seattle First National Bank to finance some of the improvements.

Finding himself unable to pay the mortgage and other outstanding debts, and anticipating 2 years of military service, Marvin executed a statutory warranty deed in January 1965 to Loren. Betty cosigned the conveyance. Marvin and Betty dissolved their marriage in April 1965 and Betty was awarded a lien of $5,000 on the property. The deed conveyed the property for $10, subject to the Seattle First mortgage, which Loren agreed to assume. The assessed value of the land and improvements was $3,360. Loren informed Valene of the deed a short time later. He told her he was holding the property for Marvin and would deed it back after Marvin returned from the military.

While serving in the Army, Marvin married Virginia. After Marvin's tour of duty in the military, they moved in with Loren and Valene for a short time, but then moved to a rental owned by Marvin's sister. For the next 23 years, Marvin never requested return of the property.

During that same period, Loren and Valene made substantial improvements to the property by planting an orchard, building a residence with a septic system, drilling a well, and installing a permanent irrigation system. They also paid off the mortgage, satisfied the lien owed to Marvin's ex-wife Betty, borrowed money secured with a mortgage, received compensation following a condemnation action on a portion of the land, and granted a road easement over the property. They also paid all property taxes and

retained all crop proceeds associated with the orchard until 1990, occasionally paying Marvin wages for his help during harvesting. In May 1973 Loren and Valene executed a community property agreement which provided that all property owned by either, whether community or separate, was to be considered community property.

Marvin and Virginia dissolved their marriage in 1979. In response to interrogatories propounded during the dissolution proceedings, Marvin made no reference to the property deeded to Loren. Sometime before 1992, Marvin married his third wife, Dawn.

In 1989, Valene told her husband she was tired of running the orchard and wanted to sell it. Loren refused to sell, insisting the property belonged to Marvin. In September 1990, Loren quitclaimed the property to Marvin over Valene's objections, reserving a life estate in the residence for him and Valene. The quitclaim deed contained the following language:

> This deed is executed to return to Grantee the title which he held prior to deeding it to Grantor. Title was passed by deed January 14, 1965, and recorded . . . to Grantor herein to hold for Grantee while Grantee was in the Military Service of the United States, with the express agreement that title would be returned to Grantee on his request.

In December 1990, Loren had $8,368.27 of the 1990 crop proceeds transferred to Marvin over Valene's objections.

On February 26, 1991, Valene filed an action for quiet title, ejectment, equitable lien and to avoid a personal property transfer. Later that year, Marvin sold a portion of his cattle operation for $40,000 to finance the 1991 crop to be grown on the property. At some point, Valene moved off the land to live with her daughter and instituted an action for legal separation from Loren. Loren and Marvin continued to live and work on the property until Loren's death some time after the trial of this action.

Following trial the court quieted title in Valene and Loren, voided the 1990 quitclaim deed from Loren to Marvin, ejected Marvin and Dawn from the property, and voided

the transfer of the 1990 crop proceeds to Marvin.[1] After Marvin's motion to reconsider was denied, this appeal followed.

## II

### DISCUSSION

■ A. Express Trust. Marvin first contends that an express trust was created in 1965 when he deeded the property to Loren. He apparently concedes the well settled law in this state that an express trust in real property must be in writing and cannot be proved by parol evidence. RCW 19.36.010; RCW 64.04.010, .020; *Silhavy v. Doane*, 50 Wn.2d 110, 114, 309 P.2d 1047 (1957); *Dowgialla v. Knevage*, 48 Wn.2d 326, 335, 294 P.2d 393 (1956); *Moe v. Brumfield*, 27 Wn.2d 714, 721, 179 P.2d 968 (1947); *Diel v. Beekman*, 7 Wn. App. 139, 143, 499 P.2d 37, *review denied*, 81 Wn.2d 1007 (1972). He argues nonetheless that the statute of frauds either is inapplicable or has been fully satisfied because: (1) Valene as a third party to the trust agreement had no standing to raise the statute of frauds defense, *Lamereaux v. Pague*, 9 Wn. App. 640, 513 P.2d 1053 (1973); (2) the agreement was fully performed when the property was conveyed by Loren back to Marvin; (3) there is a sufficient memorandum to satisfy the statute of frauds (the deed from Loren to Marvin), *Knight v. American Nat'l Bank*, 52 Wn. App. 1, 4, 756 P.2d 757, *review denied*, 111 Wn.2d 1027 (1988); and finally (4) the statute of frauds was fully satisfied by admissions of the parties of the existence of the trust in open court, *Powers v. Hastings*, 20 Wn. App. 837, 842, 582 P.2d 897 (1978), *aff'd*, 93 Wn.2d 709, 612 P.2d 371 (1980).

Marvin's argument ignores the sequence of events in this case. He argues first that Loren's conveyance to Valene in 1973 by the community property agreement was ineffective because the property was held by Loren in trust for Marvin. *Leslie v. Midgate Ctr., Inc.*, 72 Wn.2d 977, 981, 436 P.2d 201 (1967); *O'Steen v. Estate of Wineberg*, 30 Wn. App. 923, 932-33, 640 P.2d 28, *review denied*, 97 Wn.2d 1016 (1982). But

---

[1]The equitable lien claim had been dismissed on Valene's motion at trial.

the events which satisfied the requirements of the statute of frauds — full performance, a sufficient memorandum contained in the deed from Loren to Marvin, and admissions in open court—all occurred well after the community property agreement.

■ The conveyance by Marvin to Loren in 1965 did not create an express trust. Loren therefore was not a trustee of this property for the benefit of Marvin when he executed the 1973 community property agreement conveying his interest in the property to Valene. At that point, the property became the community property of Loren and Valene.[2] The purported conveyance by Loren to Marvin in 1990 without Valene's signature was therefore void. RCW 26.16.030(3).

■■ B. Resulting and Constructive Trust. Marvin alternatively contends the 1965 property transfer created a resulting or constructive trust. Both forms of trust are equitable in nature. They arise by implication of law and may be established by parol evidence of a clear, cogent and convincing nature. *Thor v. McDearmid*, 63 Wn. App. 193, 206, 817 P.2d 1380 (1991); *Yates v. Taylor*, 58 Wn. App. 187, 190-92, 791 P.2d 924, *review denied*, 115 Wn.2d 1017 (1990).[3]

A resulting trust arises when property is taken in the name of a grantee other than the person advancing the purchase money. *Thor*, at 206. "[T]hat grantee is presumed to hold legal title subject to the equitable ownership of the person advancing the consideration." *Thor*, at 206. Loren took legal title in the 1965 statutory warranty deed but also paid consideration, including cash and the assumption of Marvin's obligation against the property. Marvin presents no evidence compelling examination of the statutory warranty deed as a resulting trust.

---

[2]A written agreement converting all property of either spouse to community property is adequate even though the real estate in question is not specifically described. *In re Estate of Verbeek*, 2 Wn. App. 144, 157, 467 P.2d 178 (1970).

[3]In *Yates* we held that an alternative standard of proof for proving a constructive trust is a preponderance of the evidence when the theory underlying recovery is a contract implied at law to impose personal liability. *Yates*, at 191-92. There is neither performance of an implied duty nor unjust enrichment in these facts to support enforcing an implied quasi-contract. *Yates*, at 192.

A constructive trust is imposed in equity when property is acquired under such circumstances that the legal titleholder would be unjustly enriched if allowed to retain it. *Baker v. Leonard*, 120 Wn.2d 538, 547-48, 843 P.2d 1050 (1993); *Scymanski v. Dufault*, 80 Wn.2d 77, 89, 491 P.2d 1050 (1971). Loren acquired legal title to the land in exchange for his promise to pay the underlying mortgage. Loren and Valene not only fulfilled these obligations, but also financed major improvements on the land and invested in yearly crop production. His retention of the legal title acquired by statutory warranty deed does not constitute unjust enrichment justifying the imposition of a constructive trust.

## III

### CONCLUSION

We affirm the judgment quieting title in Valene and Loren and voiding the quitclaim deed and the transfer of crop proceeds to Marvin.

MUNSON and SCHULTHEIS, JJ., concur.

Review denied at 125 Wn. 2d 1001 (1994).