# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| VINCENT L. BADKIN, a divorced man, | No. 49007-2-II |
| Appellant/Cross Respondent, | |
| v. | |
| SAMANTHA J. BADKIN, a divorced woman, | UNPUBLISHED OPINION |
| and | |
| HOWARD M. ALLEN and NANCY B. ALLEN, husband and wife, individually and the martial community composed thereof, | |
| Respondents/Cross Appellants. | |

MELNICK, J. — Vincent Badkin appeals the trial court's dismissal of his claim for a resulting trust, and order granting ex-wife Samantha Badkin's CR 12(b)(6) motion to dismiss and denying his motion for reconsideration.[1]  Samantha cross-appeals the trial court's denial of her CR 11 motion for attorney fees.

We conclude that the trial court did not err by dismissing Vincent's claim because even assuming that the family home was held in a resulting trust, the resulting trust was repudiated and the statute of limitations ran on his claim.  Because the record is insufficient, we decline to review whether the trial court abused its discretion when it did not impose attorney fee sanctions on either party.  We affirm.

---

[1] Because the parties share the same last name, we use the parties' first names for clarity.  We intend no disrespect.

FACTS

On October 6, 2015, Vincent filed a lawsuit against Samantha and her parents to impose a resulting trust on the family home. Vincent alleged the following facts in his amended complaint. Vincent and Samantha married in 1995. In August 2004, the parties purchased a family home located in Bremerton, Washington. For "ease of financing," Samantha's parents, Howard and Nancy Allen, purchased the home in their names and held title to it. Clerk's Papers (CP) at 28. The Allens made the down payment as a gift to Vincent and Samantha. They intended that Vincent and Samantha would make the mortgage payments, and that the equity would belong to Vincent and Samantha's marital community.

Vincent and Samantha resided in the family home, made the mortgage and insurance payments, and made payments on property taxes and utilities. Vincent made repairs to and maintained the home, believing that the home was community property.

In 2008, the parties permanently separated and Vincent moved out of the family home. Samantha continued to reside there. On May 7, 2012, in a default proceeding, the Kitsap County Superior Court entered an order dissolving the parties' marriage. During the dissolution proceedings, Samantha testified, but never said that the family home was community property.[2] The court divided the parties' community assets, but did not address or divide the family home.

Vincent alleged in his amended complaint that even though the Allens had title to the family home, a resulting trust should be imposed because the parties' marital community supplied consideration for the home and did not intend the Allens to take the beneficial interest in the property. Vincent also alleged that the Allens were, instead, "trustees" of the resulting trust "to which the family home belongs for the benefit of the now-defunct marital community" of the

---

[2] The record does not include documents or transcripts from the dissolution proceedings.

parties. CP at 29. Vincent further alleged that he and Samantha, the trust "beneficiaries," were now tenants-in-common of the family home, and that he was entitled to 50 percent of its equity. CP at 29. Vincent also alleged unjust enrichment and bad faith, and stated that Samantha and her parents acted "in concert, fraudulently, under false pretenses, and with intent to mislead and misrepresent" by concealing the parties' marital interest in the home. CP at 30.

I.     MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Samantha did not file an answer to Vincent's lawsuit. Instead, she filed a motion to dismiss the complaint for failure to state a claim, arguing that the statute of limitations had run on Vincent's claims. She also requested attorney fees and costs for having to defend a meritless suit.

Samantha provided the trial court with "Additional Facts in [the] Court Record" concerning the parties' dissolution proceedings, including the cause number and the fact that, in June 2012, the trial court denied a motion to vacate the dissolution order. CP at 9. An amended dissolution decree was entered in August 3, 2012. Subsequent litigation, including a trial and an appeal,[3] resulted, but they had no effect on the findings of fact and decree regarding the division of property. Samantha argued that the latest possible date at which Vincent's cause of action could have accrued was on August 3, 2012, when the court entered the final dissolution decree and the distribution of assets occurred.

Vincent responded and moved for CR 11 sanctions based on Samantha's "frivolous" motion. CP at 13. He argued, among other matters, that Samantha failed to cite case law relating to the statute of limitations for resulting trusts and repudiation of trusts, and that she failed to meet

---

[3] *In re Marriage of Badkin*, No. 43900-0-II (Wash. Ct. App. Nov. 18, 2014) (unpublished), http://www.courts.wa.gov/opinions/pdf/D2%2043900-0-II%20Order%20Amending%20Opinion%20and%20Denying%20Motions.pdf, *review denied*, 183 Wn.2d 1010 (2015).

her burden. He argued that his amended complaint correctly alleged the creation of a resulting trust, and that no evidence existed to support an unequivocal repudiation of that trust.

Samantha replied, countering Vincent's assertions regarding the statute of limitations and repudiation of the alleged trust. Samantha argued that Vincent alleged no facts under which she and the Allens treated the family home as being held for his benefit after he moved out. Even if there was a basis for imposing a resulting trust, Samantha and the Allens' actions plainly indicated that they had no intention of giving Vincent access or rights to the family home. Vincent knew about the divorce proceedings and knew that the family home had not been listed as a community asset.

After a hearing, the trial court entered findings of fact, conclusions of law, and an order dismissing Vincent's complaint with prejudice. [4] It found that a three-year statute of limitations applied, that Vincent did not assert the discovery rule and even if he had, it did not apply. The trial court further ruled that Vincent did not plead in the amended complaint any act or failure to act that occurred within three years of filing the complaint. The trial court dismissed the case.

II.    MOTION FOR RECONSIDERATION

Approximately one week later, Vincent filed a motion for reconsideration. In the alternative, Vincent moved the court to amend the order and designate the documents that the court considered in its ruling. Samantha responded to the motion and additionally moved for attorney fees pursuant to CR 11.

Vincent replied and moved to amend his complaint for a second time. He wanted to clarify that the Allens' down payment was a gift to Vincent and Samantha for their first home in Oregon,

---

[4] Vincent moved to strike Samantha's reply. He argues on appeal that the trial court's failure to strike the reply constituted error. Because our disposition of the case does not rely on any of the materials he moved to strike, we decline to decide this issue.

not the family home at issue in this case. He argued that regardless of the down payment, he and Samantha obligated themselves to pay the rest of the purchase price of the home, and did so by making the mortgage, tax, and insurance payments, which created a resulting trust.

Vincent also argued that the only relevant testimony during the default divorce trial was given by Samantha as follows:

> [Trial court]: [Vincent's attorney] has claimed that you own the family home that you currently reside in; is that a true and accurate statement?
> [Samantha]: No, it is not.

CP at 55.

On March 28, 2016, the trial court entered an order denying Vincent's motion for reconsideration. The order stated that the court treated Samantha's CR 12(b)(6) motion to dismiss as a CR 56 motion for summary judgment. It also stated that the court considered the court documents from the parties' dissolution proceedings.[5]

The order stated that treating the family home, alleged to be held in a resulting trust, as though it was the sole property of the Allens "repudiate[d] any trust in" the home. CP at 67. The trial court found, "Once a beneficiary of a trust has notice of the repudiation of that trust by the trustee, the statute of limitations begins to run against the beneficiary." CP at 67. Based on the findings of fact and conclusions of law from the May 2012 dissolution, the court found that the Allens treated the family home as their own. It further found that the family home had not been listed as a marital asset in the May 2012 dissolution proceedings; therefore, Vincent had notice that the Allens treated the family home as their own and that it was not community property.

---

[5] The documents considered were as follows: Kitsap County Case No. 10-3-00847-6, May 7, 2012 findings fact, conclusions of law, and decree of dissolution; June 28, 2012 order on respondent's motion for relief from judgment or orders; August 3, 2012 amended findings of fact and conclusions of law; July 28, 2015 mandate from the court of appeals; and September 21, 2015 order on remand.

The trial court concluded that because Vincent filed this lawsuit more than three years after he received notice, the statute of limitations had run. The court did not impose attorney fees pursuant to CR 11 on either party and did not provide its reasoning in the order for declining to do so.

Vincent appeals and Samantha cross-appeals.

ANALYSIS

I.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Vincent argues that the trial court erred by granting Samantha's motion to dismiss because he pled sufficient facts to show that a resulting trust had been created in the family home.[6] He argues that Samantha did not meet her burden of showing that he could not prove facts consistent with his complaint that would entitle him to relief. We conclude that the trial court correctly dismissed the case because, even if we assume that a resulting trust arose in the family home, the resulting trust was repudiated and the statute of limitations ran on Vincent's claim.

A.    STANDARD OF REVIEW

We review a trial court's dismissal of a claim under CR 12(b)(6) de novo. *Trujillo v. Nw. Tr. Servs., Inc.*, 183 Wn.2d 820, 830, 355 P.3d 1100 (2015). Dismissal is proper unless it appears beyond doubt that the plaintiff can prove no set of facts, consistent with the complaint, that would justify recovery. *Sea-Pac Co., Inc. v. United Food & Commercial Workers Local Union 44*, 103 Wn.2d 800, 802, 699 P.2d 217 (1985). We presume all facts alleged in the plaintiff's complaint as true and may consider hypothetical facts supporting the plaintiff's claims. *Kinney v. Cook*, 159

---

[6] Vincent also argues that Samantha failed to file an answer to his complaint, and omitted and misquoted significant facts provided in the complaint. The argument is without merit. A motion to dismiss may be brought before making further pleading. CR 12(b)(6). Additionally, the record shows that Samantha did not omit or misquote the facts of the complaint. The pertinent facts were provided in her response and she restated Vincent's allegations.

6

Wn.2d 837, 842, 154 P.3d 206 (2007). All reasonable inferences from the alleged facts are drawn in the plaintiff's favor. *Trujillo*, 183 Wn.2d at 830.

A CR 12(b)(6) motion to dismiss for failure to state a claim is treated as a motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court. *Sea-Pac*, 103 Wn.2d at 802. Summary judgement is proper if there is no genuine issue of any material fact, and the moving party is entitled to judgment as a matter of law. *Bavand v. OneWest Bank, F.S.B.*, 176 Wn. App. 475, 485, 309 P.3d 636 (2013). We review a trial court's order granting summary judgment de novo. *Bavand*, 176 Wn. App. at 485.

B.     RESULTING TRUST & REPUDIATION

"A trust is the holding of property subject to a duty of employing it or applying its proceeds according to directions given by the person from whom it was derived." *State ex rel. Wirt v. Superior Court for Spokane County*, 10 Wn.2d 362, 369, 116 P.2d 752 (1941). "A trust in real estate implies a holding of the legal title by one for the benefit of another, who holds the equitable title–a separation of the legal estate from the beneficial enjoyment." *State ex rel. Wirt*, 10 Wn.2d at 369.

There are three types of trusts: express, resulting, and constructive. *Carkonen v. Alberts*, 196 Wn. 575, 578, 83 P.2d 899 (1938). Implied or "resulting" trusts are created by operation of law, "where the acts of the parties have no intentional reference to the existence of any trust." *Carkonen*, 196 Wn. at 578. Because a resulting trust is raised by implication of law, it is equitable in nature. *Stocker v. Stocker*, 74 Wn. App. 1, 6, 871 P.2d 1095 (1994).

A resulting trust arises when a person conveys a property's legal title to another under circumstances that reasonably shows that the person did not intend for the grantee to have a beneficial interest in the property. *Thor v. McDearmid*, 63 Wn. App. 193, 205, 817 P.2d 1380

7

(1991). Thus, where property is purchased by one person, but placed in the name of another, the person with legal title is presumed to hold it subject to the equitable ownership of the purchaser, absent evidence of contrary intent. *In re Estate of Spadoni*, 71 Wn.2d 820, 822, 430 P.2d 965 (1967).

The crucial element in a resulting trust is the intent of the grantor to transfer the property without the beneficial interest. *Thor*, 63 Wn. App. at 205. In the absence of other evidence of intent, a resulting trust is presumed in favor of a person who pays the consideration for real property deeded to another. *Engel v. Breske*, 37 Wn. App. 526, 529, 681 P.2d 263, *review denied*, 102 Wn.2d 1025 (1984).

An action based on a resulting trust is subject to a three-year statute of limitations. *Arneman v. Arneman*, 43 Wn.2d 787, 797, 264 P.2d 256 (1953); RCW 4.16.080(3), (4). The statute of limitations begins to run on a resulting trust not when the trust is formed, but "when the trustee repudiates the trust and notice of such repudiation is brought home to the beneficiary." *Dep't of Revenue v. Puget Sound Power & Light Co.*, 103 Wn.2d 501, 509, 694 P.2d 7 (1985). "A repudiation occurs when the trustee by words or other conduct denies there is a trust and claims the trust property as his or her own." *Goodman v. Goodman*, 128 Wn.2d 366, 373, 907 P.2d 290 (1995). "The repudiation must be plain, strong, and unequivocal." *Goodman*, 128 Wn.2d at 373.

We assume, without deciding, that a resulting trust arose regarding the family home.[7] However, we conclude that any resulting trust was repudiated and that Vincent had notice of the repudiation in May 2012 when the trial court entered the dissolution decree.

---

[7] Vincent assigned error to a number of the trial court's findings of fact. These findings involve whether or not a resulting trust arose. Because we assume that a resulting trust existed, we need not address these issues.

A petition for dissolution of marriage must specify community property which must be disposed of in the proceeding. RCW 26.09.020(1)(f). The trial court must then dispose of the property and the liabilities of the parties. RCW 26.09.080.

As Vincent alleged in his amended complaint, and as the court found, Samantha neither listed the family home as community property nor acknowledged it as a marital asset during the dissolution proceedings. On May 7, 2012, the trial court entered a dissolution decree which it amended on August 3, 2012. Samantha's testimony that she did not claim any ownership interest in the family home, and the failure to list the family home as community property in the dissolution proceeding was conduct evidencing a denial or repudiation of the existence of a resulting trust.

It is also irrelevant that the alleged "trustees," the Allens, were not parties to the dissolution proceedings. Vincent had clear and unequivocal notice that the home was not being held in trust for him. The evidence, therefore, showed that the "trustees" treated the property as their own when the parties separated, the family home was not partitioned, and the home continued to be held in the Allens' names. The repudiation was plain, strong and unequivocal.

We conclude that Vincent had notice of repudiation when neither party listed the family home in the dissolution proceeding. Because the trust was repudiated more than three years before Vincent filed his complaint, we conclude that the statute of limitations barred his claim, and the trial court did not err in dismissing his complaint

II.     MOTION FOR RECONSIDERATION

Vincent next argues that the trial court erred by denying his motion for reconsideration because the court considered dissolution documents not in the record, and because there was no evidence of repudiation of the trust. Based on our discussion above and the record as a whole, we conclude that the trial court did not abuse its discretion by denying Vincent's motion for

reconsideration. *Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC*, 139 Wn. App. 743, 752 n.1, 162 P.3d 1153 (2007).

III.    CR 11 SANCTIONS – ATTORNEY FEES

Lastly, Vincent argues that the trial court erred by failing to impose sanctions for attorney fees because Samantha's arguments and CR 11 motion for attorney fees were frivolous. Because the record is insufficient, we do not review the issue.

We review CR 11 sanctions for an abuse of discretion. *Biggs v. Vail*, 124 Wn.2d 193, 197, 876 P.2d 448 (1994). The party seeking review has the burden to perfect the record so that we have before us all of the relevant evidence. *Bulzomi v. Dep't of Labor & Indus.*, 72 Wn. App. 522, 525, 864 P.2d 996 (1994). "An insufficient record on appeal precludes review of the alleged errors." *Bulzomi*, 72 Wn. App. at 525; RAP 9.2(b).

Vincent chose to not provide a verbatim report of proceedings for our review. The record before us shows that the trial court declined to impose sanctions and award attorney fees to either party. However, nothing in the record shows the trial court's reasoning for declining to do so. Without such a record, we can only guess at why the trial court declined to impose sanctions and award attorney fees. Because the omission of the hearing transcript affects our ability to review the issue, it is fatal.

IV.    CROSS-APPEAL

In Samantha's cross-appeal, she argues that the trial court erred by failing to impose attorney fees pursuant to CR 11 because Vincent brought a groundless action. Because the record is insufficient, we do not review the issue.

As we discuss above, the party seeking review has the burden to perfect the record so that we have before us all of the relevant evidence. *Bulzomi*, 72 Wn. App. at 525. Samantha did not

provide a sufficient record for us to review her cross-appeal. No verbatim report of proceedings was filed and nothing in the record shows the trial court's reasoning for declining to impose sanctions. Because the record is insufficient, we can only guess at why the trial court declined to impose sanctions and award attorney fees. Therefore, we decline to review the issue.[8]

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Bjorgen, C.J.

_____
Lee, J.

---

[8] Samantha also asserts in passing that regardless of the trial court's ruling on CR 11 sanctions, we should award attorney fees pursuant to RAP 14.2. Because she does not provide argument in support of her request, and does not direct us to any statute or applicable law granting her the right to recover fees, she did not adequately brief her request for fees, and we decline to award them. *See* RAP 14.2; RAP 14.3(a)(8); RAP 18.1(a), (b); *In re Marriage of Coy*, 160 Wn. App. 797, 808, 248 P.3d 1101 (2011). To the extent that this case falls under RCW 26.09, we decline to consider Samantha's request because she failed to file an affidavit of need. RAP 18.1(c); *In re Marriage of C.M.C.*, 87 Wn. App. 84, 89, 940 P.2d 669 (1997).