IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| FU-CHENG CHEN , <br><br>                Appellant, <br><br>             v. <br><br> FUKUEN ERIC CHEN and MING-FEN CHEN, and their marital community; JASON TIE-JAY CHEN, a single person, and FKC LAND, LLC, a Washington limited liability company, <br><br>                Respondents. | No. 85333-3-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

CHUNG, J. — Fu-Cheng Chen sued Eric Chen, one of his two brothers, to enforce a contract that all three brothers signed regarding the distribution of family property. The trial court dismissed with prejudice Fu-Cheng's breach of contract claim for failure to name a necessary party, his third brother. After a bench trial, the court dismissed Fu-Cheng's claim for a resulting trust arising from a quitclaim deed he executed in 1995 transferring property in Illinois to his nephew. Because the court erred by failing to determine whether joinder was feasible, as CR 19 requires, we reverse the court's dismissal of the breach of contract claim with prejudice. We also reverse the court's order awarding fees to Eric as the party prevailing on the breach of contract claim. We affirm the court's dismissal of the resulting trust claim and remand for further proceedings consistent with this opinion.

FACTS

Fu-Cheng is the oldest of three Chen brothers. Fu-Cheng and the middle brother, Eric, both moved to the United States, while the youngest, Kuan-Ming, lives in Taiwan.

From 1970 until 2011, the Chens' father bought real estate for them, a total of 98 separate properties in Taiwan and the United States. While their father's name did not appear on the titles, he was in control and made all the decisions about what properties to buy and sell. He titled these properties in his sons' names, and he alone decided whose name to put on which titles and in what proportion. Most of the properties are titled in the name of one son only, but more than a dozen U.S. properties are titled in both Fu-Cheng and Eric's names, and one U.S. property is titled in the names of all three brothers. Most of the U.S. properties are located in Washington State, with others in Illinois, Indiana, Arkansas, Texas, and California.

In 1988, the father bought 336 acres of farmland in Illinois from the Blum family, the "Blum Farm," for $2.4 million. The seller's warranty deed conveyed a 60 percent interest in the property to Eric and 40 percent to Fu-Cheng. At that time, Fu-Cheng lived in Taiwan and was not a U.S. citizen. In 1995, Eric learned an Illinois law might impose a substantial penalty on agricultural property owned by a non-U.S. citizen for more than six years. Eric told their father and Fu-Cheng that there were two choices: place the property in a trust or title the property in the name of Eric's son, Jason, who was a U.S. citizen. Because Eric thought it was not clear whether a trust would be safe, Fu-Cheng decided on the other

2

option, and executed a quitclaim deed conveying "all" his interest in Blum Farm to Jason, who was seven years old at the time.

After Fu-Cheng deeded his interest in Blum Farm to Jason in 1995, the Chens' father acquired five Washington properties and titled all five solely in Fu-Cheng's name. In 2001, Blum Farm sold for more than $16 million. The proceeds were used as part of a 1031 exchange;[1] Eric created FKC Land, LLC, with himself and Jason as its members, and the company acquired 11 properties in Washington State with the proceeds from the sale of Blum Farm. Two of the 11 properties FKC Land acquired were sold to it by Fu-Cheng. Eric took a $1.5 million distribution from the sale proceeds. Also, after the sale of Blum Farm in 2001, Fu-Cheng's father acquired seven properties in Taiwan and titled them solely in Fu-Cheng's name.

The brothers' father suffered a stroke in 2010. As he recovered, he directed his sons to memorialize his wishes that the properties he acquired and titled in their names should be "re-register[ed]" with 30 percent for Fu-Cheng, 40 percent to Eric, and 30 percent to Kuan-Ming. The brothers did so by signing the Family Asset Distribution Agreement (FADA) in 2011. The next week, the brothers and Jason, signed a memorandum (2011 Memorandum) that clarified which properties were in the scope of the FADA and which were not. The 2011 Memorandum also clarified that the ownership of U.S. property in the scope of the FADA is 30 percent for each brother and 10 percent for Jason. Finally, in

---

[1] See 26 U.S.C. § 1031 (allowing postponement of payment of tax on gain upon sale of property if proceeds from sale are reinvested in a similar property as part of a like-kind exchange).

2013, Fu-Cheng and Eric, their wives, and Jason signed an agreement (2013 Agreement) to form a U.S. company to hold the Chen family's properties in the U.S. and distribute shares in that company in a "3:3:3:1" ratio. Unlike the FADA and 2011 Memorandum, Kuan-Ming did not sign the 2013 Agreement.

The brothers' father recovered from his stroke but passed away in 2016. The next year, the brothers began arguing about implementing the FADA. In November 2020, Fu-Cheng sued Eric, Eric's wife, and Jason, for a 40 percent interest in Eric and Jason's company, FKC Land, LLC. Fu-Cheng alleged several claims, including that the intent of the parties was to entrust Eric and Jason with assets for Fu-Cheng's benefit, and Fu-Cheng was entitled to an equitable resulting trust. In January 2021, Fu-Cheng amended his complaint and reduced his claim to 30 percent of the land company. Eric answered for all defendants in March, and in May he moved to dismiss for failure to join an indispensable party, his brother Kuan-Ming. The court denied Eric's[2] motion but ordered that Fu-Cheng "shall file a motion to file an amended complaint as discussed on the record no later than July 9, 2021."

In July 2021, Fu-Cheng moved to amend. His second amended complaint joined FKC Land, but not Kuan-Ming. It asserted claims for breach of contract and specific performance, declaratory judgment, and other claims in addition to a resulting trust.

In September 2022, Eric moved to dismiss with prejudice because Fu-Cheng's attorneys withdrew and he failed to comply with the court's scheduling

---

[2] Hereinafter, "Eric" refers to all the defendants collectively.

order. New attorneys for Fu-Cheng entered a limited appearance in October 2022 and argued for a continuance, which the court granted until January 2023.

On the first day of trial in January 2023, Fu-Cheng moved to voluntarily dismiss the bulk of his claims, leaving for trial the contract claim and the resulting trust claim, and the court granted the motion.[3] Fu-Cheng claimed that if the FADA was enforceable, he was due both specific performance and damages from its breach, and if it was not enforceable, that a resulting trust arose when he quitclaimed his interest in Blum Farm to Jason.

In February 2023, after Fu-Cheng rested his case-in-chief, Eric moved for judgment as a matter of law on both claims. The court found that Fu-Cheng conceded specific performance "was impossible without Kuan-Ming being a party." It concluded that Kuan-Ming was a necessary party and dismissal of Fu-Cheng's "breach of contract claim for failure to name a necessary party is proper," and it dismissed the contract claim.

The court then granted Eric's motion to dismiss the jury, and it proceeded with a bench trial on Fu-Cheng's claim for an equitable resulting trust. The court concluded Fu-Cheng "failed to prove by clear and convincing evidence that, at the time he quit claimed the property to Jason, Fu-Cheng intended to retain *for himself personally* a 40% equitable interest in Blum Farm," and it dismissed the claim with prejudice. The court also concluded that as a matter of equity, Fu-Cheng had been compensated with properties in Washington State and Taiwan

---

[3] The claims Fu-Cheng voluntarily dismissed were for conversion, breach of fiduciary duty, unjust enrichment, accounting, and constructive trust. The court dismissed those claims without prejudice.

for the transfer of his interest in Blum Farm. Further, on the contract claim, which had been previously dismissed, the court concluded that Eric was the prevailing party and could seek attorney fees.

Fu-Cheng moved the court to reconsider the conclusion that Eric had prevailed on the breach of contract claim. He argued that the court had not dismissed that claim with prejudice and had never concluded the FADA was enforceable, only that Kuan-Ming was a necessary party. Fu-Cheng argued he "can, and will, file another action and name Kuan-Ming" as a party.[4] In May 2023, the court denied reconsideration "except that the Court now clarifies its February 8, 2023, CR 50(a) Order dismissing Plaintiff's Breach of Contract Claim WITH PREJUDICE." The court determined that Fu-Cheng's "failure to join Kuan[-]Ming Chen warrants a dismissal with prejudice, whether or not it was feasible to join Kuan[-]Ming Chen." Separately, the court awarded attorney fees and costs to Eric. In May 2023, Fu-Cheng timely appealed.

DISCUSSION

Fu-Cheng assigns error to the court's orders granting Eric's motion for judgment as a matter of law and dismissing the contract claim with prejudice, based on failure to join a necessary party, and denying reconsideration thereof. He also assigns error to the court's findings and conclusions on the resulting trust claim and its order awarding Eric attorney fees and costs.

---

[4] According to Eric, Fu-Cheng subsequently filed a complaint in King County Superior Court naming Kuan-Ming and Eric, their spouses, Jason, and FKC Land as defendants.

I.      Dismissal of Fu-Cheng's contract claim with prejudice

The court dismissed Fu-Cheng's contract claim because Fu-Cheng failed to join a necessary party, Kuan-Ming. Fu-Cheng argues the trial court erred by dismissing the claim with prejudice because it "failed to follow the three-step analysis set forth in CR 19," and because "CR 19(a) does not afford the trial court discretion to dismiss the action without first deciding whether joining Kuan-Ming was feasible." Eric counters that Fu-Cheng bore the burden of proof to show that Kuan-Ming was not a necessary party, Eric also contends that failing to join Kuan-Ming as a party was Fu-Cheng's choice and constituted inexcusable neglect, that joinder after trial is not feasible, and that any error cannot be raised for the first time on appeal and was invited error. We conclude that because the trial court did not first find that joining Kuan-Ming was not feasible under CR 19(a), it erred by conducting an analysis under CR 19(b) and dismissing the contract claim with prejudice.

We review a motion for a judgment as a matter of law "in the same manner as the trial court." Johnson v. Liquor & Cannabis Bd., 197 Wn.2d 605, 611, 486 P.3d 125 (2021). Granting the motion is appropriate if " 'viewing the evidence most favorable to the nonmoving party, the court can say, as a matter of law, there is no substantial evidence or reasonable inference to sustain a verdict for the nonmoving party.' " Id. at 611 (quoting Sing v. John L. Scott, Inc., 134 Wn.2d 24, 29, 948 P.2d 816 (1997)).[5]

_____

[5] Fu-Cheng concedes the proper standard of review for the CR 50 motion is de novo. In its order denying Fu-Cheng's CR 59 motion for reconsideration, the court clarified that its CR 50(a) order dismissing Fu-Cheng's breach of contract claim was with prejudice. Generally, we review a CR 59 motion for abuse of discretion, but where, as here, the motion sought review for

CR 19 addresses when the joinder of absent persons is needed for a just adjudication. Auto. United Trades Org. v. State, 175 Wn.2d 214, 221, 285 P.3d 52 (2012). The rule states in relevant part:

> **(a) Persons to Be Joined if Feasible.** A person who is subject to service of process . . . *shall be joined as a party* in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (A) as a practical matter impair or impede the person's ability to protect that interest or (B) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the person's claimed interest. If the person has not been so joined, *the court shall order* that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and the person's joinder would render the venue of the action improper, the joined party shall be dismissed from the action.

> **(b) Determination by Court Whenever Joinder Not Feasible.** If a person joinable under (1) or (2) of section (a) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: (1) to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

CR 19 (emphasis added).

To determine whether joinder is needed for a just adjudication, a court engages in a three-step analysis: it determines (1) whether the absent party is necessary, (2) whether joinder is feasible, and, (3) if joinder is not feasible,

---

an error of law, review is de novo. Schneider v. City of Seattle, 24 Wn. App. 251, 255, 600 P.2d 666 (1979).

whether the action should still proceed without the party. Auto. United Trades Org., 175 Wn.2d at 221-22. Under CR 19(a), a necessary party is a party whose absence from the proceedings would prevent the trial court from affording complete relief to the existing parties or a party whose absence would either impair the absent party's interest or subject an existing party to inconsistent or multiple liability. Coastal Bldg. Corp. v. City of Seattle, 65 Wn. App. 1, 4-5, 828 P.2d 7 (1992).

Generally, when a necessary party has not been joined, dismissal should be without prejudice. Orwick v. Fox, 65 Wn. App. 71, 82 n.6, 828 P.2d 12 (1992). But if a court determines that an absent party is a necessary party under CR 19(a) but the party cannot be joined, i.e., joinder is not feasible, then the court must decide whether "in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." CR 19(b). Determining indispensability "is rooted in equitable principles" and depends on " 'pragmatic considerations.' " Auto. United Trades Org., 175 Wn.2d at 227, 228 (quoting Provident Tradesmens Bank & Tr. Co. v. Patterson, 390 U.S. 102, 107, 88 S. Ct. 733, 19 L. Ed. 2d 936 (1968)). "Whether a person is 'indispensable,' . . . can only be determined in the context of particular litigation." Provident Tradesmens Bank, 390 U.S. at 118. Only if the court has analyzed the factors in CR 19(b) and determined that the absent party is indispensable may it dismiss the action with prejudice.

Under CR 19, "[t]he party urging dismissal bears the burden of persuasion." Auto. United Trades Org., 175 Wn.2d at 222. However, if it appears from " 'an initial appraisal of the facts' " that there is an unjoined indispensable party, " 'the burden devolves on the party whose interests are adverse to the unjoined party to negate this conclusion[,] and a failure to meet that burden will result in the joinder of the party or dismissal of the action.' " Id. (quoting 7 CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 1609, at 130 (2001)).

Here, initially Eric bore the burden of persuasion that joinder of Kuan-Ming was necessary. Eric first raised this issue in May 2021 in a CR 12(b)(7) pre-trial motion seeking dismissal, arguing that FKC Land and Kuan-Ming were indispensable parties under CR 19. Fu-Cheng responded that Kuan-Ming's interests were not "in any way impacted" because the property at issue was "the 300 acres of Illinois property, that became the property that's held currently by FKC Land," which Eric and Jason owned. At the hearing on the motion, the court stated the question before it was "whether in equity and good conscience an action should proceed without those indispensable parties," referring to both FKC Land and Kuan-Ming. The court noted its concern about dismissing based on the absence of an indispensable party but reasoned it might be possible to shape any potential relief without prejudice to Kuan-Ming. The court also stated at the hearing that "it would be valuable to have FKC as a party" and that it would "simplify these arguments if there is an amendment" to add FKC Land. In a subsequent written order, the court denied Eric's motion to dismiss and ordered

Fu-Cheng to file a motion to amend the complaint "as discussed on the record." Accordingly, Fu-Cheng filed a second amended complaint joining FKC Land as a defendant, but he did not join Kuan-Ming.[6]

Eric did not raise the issue of joinder again until nearly two years later. In February 2023, after Fu-Cheng rested his case in chief at trial, Eric moved for judgment as a matter of law because "Kuan[-Ming] is necessary for the enforcement of any contract." The court granted the motion and dismissed the contract claim for failure to name a necessary party, without specifying whether the dismissal was with or without prejudice. The court concluded that Kuan-Ming "[wa]s a necessary party for the enforcement of the 2011 FADA, 2011 Memorandum, and the 2013 Agreement which require the division of and re-titl[]ing of property in Washington State and Taiwan currently titled to Kuan[-]Ming." Fu-Cheng does not challenge the court's conclusion as to the first step of the CR 19 three-step analysis, that Kuan-Ming was a necessary party.

The next step is to determine whether joinder of the absent necessary party, Kuan-Ming, was feasible. But the court's order granting Eric's CR 50 motion did not address feasibility. Not until later, in its order denying Fu-Cheng's motion for reconsideration, did the court discuss feasibility. In that motion, Fu-Cheng asked the court to reconsider its conclusion that Eric was the prevailing

---

[6] Later, at trial, Fu-Cheng's counsel, who had entered an appearance after Fu-Cheng's initial attorneys had withdrawn, explained why he had not attempted joinder earlier. He stated his "understanding was if I were to file a leave to amend, it would have been summarily denied, and it was pled how it was pled." The court had granted Fu-Cheng's new counsel a continuance until January 2023 but ruled that "[d]iscovery is closed." The court reasoned that to reopen discovery would be a prejudice to Eric.

party on the contract claim. Fu-Cheng argued the court had not dismissed his claim with prejudice or reached the merits of whether the FADA was enforceable.

The court's order denying reconsideration "clarifi[ed]" that its prior dismissal of the contract claim was with prejudice. The court explained that whether or not it was feasible to join Kuan-Ming, the failure to join him "warrant[ed] a dismissal with prejudice." Its order noted that neither party asked the court to determine feasibility "and the record is insufficient for the Court to make this finding." The court proceeded to consider both alternatives—that is, first, it assumed joinder was not feasible and, second, it assumed joinder was feasible. Addressing the first alternative, the court noted that "[i]f Kuan-Ming Chen is not subject to process and could not be joined in this action, the Court must apply CR 19(b) to determine whether in equity and good conscience an action should proceed." Applying the CR 19(b) factors, the court concluded that enforcing the FADA was "impossible" without Kuan-Ming as a party. The court then addressed the other alternative, "if Kuan-Ming Chen were subject to process and could have been joined," and concluded that in that case, Fu-Cheng's failure to join him was inexcusable neglect. The parties disagree as to whether the trial court erred by failing to determine whether it was feasible to join Kuan-Ming before proceeding to consider under CR 19(b) whether the action could still proceed without him.

Fu-Cheng compares his case to Orwick, in which the trial court dismissed Orwick's tort claims under CR 19 with prejudice, but "entered no findings as to whether [the absent parties] were necessary parties or indispensable parties and

12

did not order that they be joined, but simply dismissed plaintiffs' action citing CR 12(b)(6) and CR 19." 65 Wn. App. at 77, 80, & 82 n.6. The Orwick court reasoned that "this alone"—i.e., the trial court's failure to enter findings—was an abuse of its discretion because dismissal with prejudice under CR 19(b) requires "a clear determination" than an absent party "is both necessary and indispensable." Id. at 80.

We agree with Fu-Cheng that CR 19 requires the court to determine whether joinder is feasible. Subsection (a) of CR 19 is entitled "Persons to Be Joined if Feasible." It states that "[a] person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action *shall* be joined as a party" under certain circumstances that show that they are necessary to the action. CR 19(a) (emphasis added); Coastal Bldg. Corp., 65 Wn. App. at 4-5 (a necessary party is a party whose absence from the proceedings would prevent the trial court from affording complete relief to the existing parties or a party whose absence would either impair the absent party's interest or subject an existing party to inconsistent or multiple liability). And, if a necessary party has not been joined, "the court *shall order* that the person be made a party." CR 19(a) (emphasis added). "Shall" is mandatory language. See, e.g., Pub. Util. Dist. No. 1 of Lewis County v. Wash. Pub. Power Supply Sys., 104 Wn.2d 353, 368, 705 P.2d 1195 (1985) ("the term 'shall' is directory"). Despite having determined Kuan-Ming was a necessary party, here, the court failed to determine if his joinder was feasible. To the contrary, it concluded "the

record is insufficient for the Court to make this finding [as to feasibility]." As a result, the court issued no order requiring that Kuan-Ming be joined as a party.[7]

As the title of CR 19(b) indicates, this subsection governs "Determination[s] by Court Whenever Joinder Not Feasible." Thus, according to the plain language of the rule, a prerequisite to the analysis under CR 19(b) is a finding that joinder is not feasible. Even if, as the court noted, neither party here asked for a determination of feasibility, CR 19 requires this analysis. The court erred by failing to determine whether joinder was feasible before applying CR 19(b).[8]

Eric argues that because Fu-Cheng did not request the court to determine whether or not it was feasible to join Kuan-Ming below, he cannot argue on appeal that the court erred by not determining feasibility, and this is invited error. "Under the invited error doctrine, 'a party may not set up an error at trial and then complain of it on appeal.' " Shavlik v. Dawson Place, 11 Wn. App. 2d 250, 270, 452 P.3d 1241 (2019) (quoting Grange Ins. Ass'n v. Roberts, 179 Wn. App. 739, 774, 320 P.3d 77 (2013)). "The doctrine applies when a party takes 'affirmative and voluntary action' that induces the trial court to take an action later challenged on appeal." Id. (quoting Grange Ins. Ass'n, 179 Wn. App. at 774).

---

[7] As discussed above, its pretrial order denying Eric's CR 12(b)(7) motion to dismiss required Fu-Cheng to amend the complaint "as discussed on the record," and the discussion at the hearing focused on FKC as a necessary party, leaving open the question of whether Kuan-Ming was a necessary party. Thus, CR 19 did not require the court at that point to issue an order requiring his joinder.

[8] The court also concluded that "if Kuan[-]Ming were subject to process and could have been joined," Fu-Cheng's failure to join him was inexcusable neglect. This conclusion was an alternative conclusion that assumed feasibility, so we need not address the parties' arguments as to whether this conclusion was error.

Fu-Cheng did not take any affirmative voluntary act that induced the trial court's action, or inaction, at issue. Rather, Fu-Cheng consistently argued Kuan-Ming was not necessary to his breach of contract claim. He eventually had to concede that position, but his concession did not induce the trial court to fail to determine feasibility. Moreover, it was not until the court issued its order denying reconsideration that the court "clarified" that it was not simply dismissing so that Fu-Cheng could join Kuan-Ming as a party, but dismissing the contract claim with prejudice. In the order denying Fu-Cheng's motion for reconsideration, the court explicitly mentioned feasibility for the first time and decided it could not decide that issue. Thus, Fu-Cheng had no reason, or opportunity, to raise the court's failure to address feasibility prior to that order.

As we conclude the court erred by failing to engage in the second step of determining feasibility, we reverse the court's dismissal of Fu-Cheng's contract claim. On remand, in accordance with CR 19(a), the court shall order that Kuan-Ming be made a party. Only if the court determines that it is not feasible[9] to join Kuan-Ming may it proceed to analyze the third step under CR 19(b), whether the action should still proceed without Kuan-Ming.[10]

---

[9] While the definition of "feasible" is a question of law, feasibility is generally a question of fact. Kelley v. Centennial Contractors Enters., Inc., 169 Wn.2d 381, 386, 387-88, 236 P.3d 197 (2010) (holding that "feasible" has "its plain and ordinary meaning as set forth in Webster's" dictionary: " 'capable of being done, executed, or effected: possible of realization . . . capable of being managed, utilized, or dealt with successfully: SUITABLE . . . REASONABLE' " (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 831 (2002))). Fu-Cheng argues that the parties do not dispute that Washington State property is titled in Kuan-Ming's name and, by having Washington State property titled in his name, Kuan-Ming consents to personal jurisdiction. See RCW 4.28.185(1)(c). RCW 4.28.180 allows for personal service out of state. As this argument is related to feasibility to be determined on remand, we do not address it here.

[10] Fu-Cheng "presum[es]" the trial court dismissed his claim for a declaratory judgment that the FADA was enforceable and argues that this dismissal, too, was improper. Although the court granted Eric fees for "defending the FADA" and for "FADA enforcement," neither the court's

II.     Dismissal of Fu-Cheng's resulting trust claim

After it dismissed Fu-Cheng's contract claim, the court granted Eric's motion to dismiss the jury, and it proceeded with a bench trial on the claim of a resulting trust. The court's written findings and conclusions found Fu-Cheng conveyed "all" his 40 percent interest in Blum Farm to Jason. The court concluded "Fu-Cheng failed to prove by clear cogent and convincing evidence that, at the time he quit claimed the property to Jason, Fu-Cheng intended to retain *for himself personally* a 40% equitable interest in Blum Farm." The court also concluded that Fu-Cheng "has been compensated for such transfer" by the properties his father purchased for him alone in Washington State and Taiwan and dismissed the equitable claim of resulting trust.

Fu-Cheng claims the court erred by concluding he failed to provide clear, cogent, and convincing evidence that, at the time he quitclaimed his interest in Blum Farm to Jason, he "*personally*" intended to retain a beneficial interest in Blum Farm. Eric argues the quitclaim deed Fu-Cheng executed in Jason's favor "cannot create a resulting trust" legally and, even if it could, as an equitable matter, their father purchased additional properties titled in Fu-Cheng's name alone "to compensate" him. We agree with Eric.

"A resulting trust arises where a person makes or causes to be made a disposition of property under circumstances which raise an inference that he does not intend that the person taking or holding the property should have the beneficial interest in the property." Engel v. Breske, 37 Wn. App. 526, 528-29,

---

CR 50 order nor the order denying reconsideration expressly dismissed or addressed the claim for declaratory relief.

681 P.2d 263 (1984) (quoting 5 A. Scott, <u>Trusts</u> § 404.1, at 3213 (3d ed. 1967)). In other words, " '[w]hen title to property is taken in the name of a grantee other than the person advancing the consideration, the one in whose name title is taken is a resulting trustee for the person who paid the purchase price, in the absence of evidence of a contrary intent.' " <u>In re Est. of Spadoni</u>, 71 Wn.2d 820, 822, 430 P.2d 965 (1967) (quoting <u>Donaldson v. Greenwood</u>, 40 Wn.2d 238, 249, 242 P.2d 1038 (1952)).

"An essential element of a resulting trust is that there be an *intent* that the beneficial interest in property not go with the legal title. By definition, this intent is not express but may be inferred from the terms of the disposition or from the accompanying facts and circumstances." <u>Engel</u>, 37 Wn. App. at 529 (citing <u>Lalley v. Lalley</u>, 43 Wn.2d 192, 196, 260 P.2d 905 (1953)). Where the person asserting the trust "paid the consideration for the property, a presumption arises that a trust exists . . . , absent evidence of a contrary intent." <u>Engel</u>, 37 Wn. App. at 529. But where the person asserting the trust "does not furnish all of the consideration for the property, no presumption . . . arises [and] the person asserting the trust has the burden of proving its existence by clear, cogent and convincing evidence." <u>Id.</u> This evidence may include parol evidence. <u>Spadoni</u>, 71 Wn.2d at 823.

When, as here, findings of fact and conclusions of law are entered following a bench trial, appellate review is limited to determining whether the findings are supported by substantial evidence, and if so, whether the findings support the trial court's conclusions of law and judgment. <u>Sunnyside Valley Irrig. Dist. v. Dickie</u>, 111 Wn. App. 209, 214, 43 P.3d 1277 (2002) (citing <u>Holland v.</u>

17

Boeing Co., 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978)). Evidence is substantial if it is sufficient to persuade a fair-minded person that the declared premise is true. Sunnyside Valley Irrig. Dist., 111 Wn. App. at 214 (citing Nguyen v. Dep't of Health, Med. Quality Assurance Comm'n, 144 Wn.2d 516, 536, 29 P.3d 689 (2001), cert. denied, 535 U.S. 904, 122 S. Ct. 1203, 152 L. Ed. 2d 141 (2002)). Because Fu-Cheng fails to assign error to any particular finding of fact, the court's findings are verities on appeal. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 808, 828 P.2d 549 (1992). Our review is limited to determining whether the findings support the trial court's conclusions of law.

First, at closing argument below, Fu-Cheng clarified that the relief he sought was a resulting trust in 30 percent of the $1.5 million in excess cash distributed from FKC Land to Eric after the sale of Blum Farm and acquisition of Washington properties in the 1031 exchange. Fu-Cheng cannot now resuscitate on appeal the argument he abandoned below, that he retains a "beneficial interest in the Blum Farm."

Second, the unambiguous language of the quitclaim deed Fu-Cheng granted to Jason makes it clear that Fu-Cheng's intent was to convey all of his 40 percent interest in Blum Farm; the Illinois statutory quitclaim deed "CONVEY(S) and QUIT CLAIM(S) . . . all interest" in Blum Farm. See Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc., 168 Wn. App. 56, 67, 277 P.3d 18 (2012) ("the operative words of a quitclaim deed are 'conveys and quitclaims.' ") (quoting 18 WILLIAM B. STOEBUCK & JOHN WEAVER, WASHINGTON PRACTICE: REAL ESTATE: TRANSACTIONS § 14.2, at 116 (2d ed. 2004)). A person conveying their

interest in a quitclaim deed is presumed to have transferred all their legal and equitable interest in the property. RCW 64.04.050 (a quitclaim deed "shall be deemed" to release and quitclaim to the grantee "all the then existing legal and equitable rights of the grantor").

Third, the facts do not support a presumption in favor of a resulting trust. Here, while Fu-Cheng did convey all *his* interest in Blum Farm to Jason, that interest was only 40 percent of Blum Farm; Eric had title to the other 60 percent. Because Fu-Cheng did not furnish all the consideration for the property, the presumption does not apply.

Fourth, even if the intent to create a resulting trust "may be inferred from the terms of the disposition or from the accompanying facts and circumstances," Engel, 37 Wn. App. at 529, here, the court made no finding of an inference of such intent. Fu-Cheng testified that Eric suggested either forming a trust or quitclaiming Blum Farm to Jason, and that he chose to transfer his interest to Jason: "So then I said, okay, we will transfer that to Jason." The court made the finding, unchallenged on appeal, "that Fu-Cheng made the decision to transfer his 40% interest in the Blum Farm to Jason and that he signed this deed voluntarily."

Finally, a resulting trust is an equitable remedy. See Stocker v. Stocker, 74 Wn. App. 1, 6, 871 P.2d 1095 (1994) (resulting and constructive trusts are equitable in nature and arise by implication of law). Here, Fu-Cheng does not challenge the court's findings that after he conveyed his interest in Blum Farm to Jason, his father bought and titled solely in Fu-Cheng's name five properties in

19

Washington State and after Blum Farm was sold, his father purchased seven properties in Taiwan titled solely in his name. Thus, the court's unchallenged findings of fact support its conclusion that Fu-Cheng was equitably compensated by his father for conveying his interest in Blum Farm to Jason, so there was no need for the court to provide an equitable remedy.

### III.  Fees

In March 2023, the court concluded that Eric prevailed on the contract claim and allowed him to apply for attorney fees and costs. In May 2023, it granted Eric's motion for fees and costs. Because we reverse the court's order dismissing the breach of contract claim, we reverse the court's order granting fees and costs to Eric as premature. For the same reason, the Respondents' request for fees on appeal is denied.

### CONCLUSION

We reverse the court's dismissal of Fu-Cheng's breach of contract claim. We remand for the court to order the joinder of the necessary party, Kuan-Ming, and to proceed in a manner consistent with CR 19 and this opinion. We affirm the court's dismissal with prejudice of Fu-Cheng's claim for a resulting trust. Finally, we reverse the court's order awarding fees to Eric as the prevailing party with respect to Fu-Cheng's breach of contract claim.

Affirmed in part, reversed in part, and remanded.

Chung, J.

WE CONCUR:

Feldman, J.          Coburn, J.